TICE, Appellant, v. SUPREME LODGE KNIGHTS OF PYTHIAS, a Corporation.

**Division One, May 29, 1907.**

1. **INSURANCE: Fraternal Association: Suicide.** Suicide by the insured is a complete defense to a suit on a policy or certificate issued by a fraternal beneficiary association after the act of 1897 went into effect.

2. ———: ———: ———: **Act of 1897.** The act of 1897, providing that fraternal beneficiary associations shall be exempt from the provisions of the insurance laws of this State, is to be read into all contracts thereafter issued by such associations, and when that is done such contracts are excepted from the operation of the general statute (secs. 7896 and 7897, R. S. 1899), providing that "in all suits upon policies of insurance upon life hereafter issued by any company doing business in this state" suicide shall be no defense.

3. ———: ———: **Doing Business for Profit.** The Supreme Lodge Knights of Pythias is not an old-line insurance company doing business for profit, but a fraternal beneficiary association, and hence suicide annuls a policy issued by it in 1898.

Transferred From St. Louis Court of Appeals.

AFFIRMED.

*J. S. Clay* and *Pipkin & Swink* for appellant.

(1) It is evident under the authority of the Toomey Case that defendant was doing an old-line insurance business. Defendant admitted at the trial of this cause that its laws affecting the Endowment Rank have not been changed since then, and that they are doing business on the same plan now that they were then.

Therefore, unless the laws of our State have been so altered as to make Fraternal Beneficial Associations out of old-line companies, defendant must remain in the class assigned it by that decision. Toomey v. Supreme Lodge, 147 Mo. 130. (2) By comparing the two statutes it will be seen that the 1889 statute, as construed, and the express provisions of the 1899 statute, with reference to profit-making, are the same. If profit-making was inconsistent with the law of 1889, how much more so ought it be with the law of 1899. Defendant's contract with John P. Tice is the same in every particular as the one set out and passed upon in the Toomey Case, and the law laid down in that case with reference to profit-making should govern in this. The Endowment Rank is a profit-making concern, capable of possessing large amounts of money and property accumulated from dues and assessments and the rents and profits therefrom. Under the laws governing said rank these sums of money so accumulated are to be invested and reinvested indefinitely. As an evidence of its profit-making capacity we cite the following: It had on hand on the 1st day of July, 1892, $69-356.32. On January 1, 1901, it had on hand a balance of $497,976.17. Showing a net gain in eight and one-half years of $426,619.85. (3) Where the sum to be paid at death is certain, and is to be paid without condition, the contract belongs to the regular or old-line class. The contract in question has no provision that in case of death the amount secured is to be paid "from assessments or dues collected from its members." It is a straight agreement to pay a sum certain at the death of the assured out of any funds it may have from whatever source secured. As such it does not belong to the fraternal beneficial class. Toomey v. Supreme Lodge, 147 Mo. 130; Aloe v. Fidelity Mut. Life Assn., 164 Mo. 675; Lewis v. Funeral Ben. Assn., 77 Mo. App. 586.

*R. P. & C. B. Williams* for respondent.

GRAVES, J.—This case reaches this court from
the St. Louis Court of Appeals, for the reason that
BLAND, P. J., filed a dissenting opinion in which he asks
that the cause be certified to this court, as, in his judg-
ment, the majority opinion is in conflict with the case
of Toomey v. Supreme Lodge Knights of Pythias, 147
Mo. 129, decided by this court.

The action is one upon a certificate of insurance
issued by defendant to one of its members, John P.
Tice, on July 25, 1898, and accepted by said Tice, July
27, 1898. In the lower court judgment was for defend-
ant and plaintiff appealed. Said certificate was for
the flat sum of one thousand dollars, and was payable
to plaintiff, Madison M. Tice, father of John P. Tice.
The said John P. Tice committed suicide October 8,
1900. The following admissions were made by written
stipulation at the trial:

"That John P. Tice departed this life on the
eighth day of October, 1900; that he committed suicide
by shooting himself with a pistol. That after the issu-
ance of said certificate and up to the time of his death,
he paid all monthly payments, dues and assessments as
required by said certificate and the laws of the order.
And that after his death, to-wit, on the thirty-first day
of December, 1900, proofs of death were forwarded
to the defendant at Chicago, Illinois. That said certifi-
cate has not been paid.

"It is further stipulated that before this suit was
brought, the defendant tendered to the plaintiff herein
the sum of sixty-six dollars, being the amount claimed
by the defendant to be due under said policy or certifi-
cate, and since the institution of this suit has paid said
amount into this court, with its answer. And that
amount is the true amount due on said policy of certifi-

cate if the contention of defendant is sustained by the court.

"That the defendant at the time of the issuance of the certificate here sued on, and at the time of the death of the said John P. Tice, had complied with the provisions of the Act of 1897, page 132, required of foreign companies and was authorized by the Superintendent of Insurance of the State of Missouri to do business in this State under the Act of 1897, as a Fraternal Beneficiary Association.

"It is further stipulated that the defendant made an extra assessment upon all the members of the Endowment Rank in May, 1892, under the laws of said order, and made an extra assessment upon all the members of said Rank in May, 1901, under the laws of said order."

Defendant denied liability, except as to sixty-six dollars, which it had previously tendered, and again tendered and paid into court with its answer. Liability was denied on the ground of suicide. The application for the certificate made and signed by John P. Tice, contained this, among other provisions:

"It is agreed that if death shall result by suicide, whether sane or insane, voluntary or involuntary, or if death is caused or superinduced by the use of intoxicating liquors or by the use of narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation of or attempt to violate any criminal law, then there shall be paid only such a sum in proportion to the whole amount of the certificate as the matured life expectancy at the time of such death is to the entire expectancy at date of acceptance of the application by the board of control; the expectation of life based upon the American Experience table of mortality in force at the time of such death to govern."

Section 1 of article 6 of the General Laws, Rules

and Regulations of defendant, in force at the time of the application, was as follows:

"If the death of any member of the Endowment Rank heretofore admitted into the first, second, third, or fourth classes or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then the amount to be paid upon such member's certificate shall be a sum only in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission to the Endowment Rank, the expectation of life based upon the American Experience Table of mortality in force at the time of such force to govern."

There is a full, detailed statement of the case in the opinion by GOODE, J., of the St. Louis Court of Appeals, 100 S. W. 519, in which will be found set out the divers and sundry provisions of the laws governing the Supreme Lodge Knights of Pythias and the Endowment Rank of said Lodge. We likewise have a full statement as to the organization of the defendant and its Endowment Rank, and the manner and character of its business in the recent case of Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670. This latter case was decided by the Court in Banc, in an exhaustive opinion by Fox, J. The issue in the case at bar is sharp and clean cut, and in our judgment, a reiteration of the facts and a lengthy statement would unnecessarily burden our reports with superfluous matter. The material facts of this case and the Westerman case, except the question of suicide, and the date of the certificate of insurance are so much alike, that no reason can

be assigned for a re-statement of them. The same character of certificate was involved in each. We shall, therefore, be content with a discussion of the real question in this case, referring the reader for a more detailed statement to the two opinions, supra.

In this case, the question is, does section 7896, Revised Statutes 1899, apply? This section reads:

"In all suits upon policies of insurance upon life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

The question in the Westerman case was whether or not section 7897, Revised Statutes 1899, applied. Both sections are under the general insurance laws of this State. To determine whether or not section 7897 applied in the Westerman case, it became necessary for us to determine whether or not the business done by defendant was old-line insurance or fraternal beneficiary insurance. We determined that it was the latter and that section 7897 did not apply. The writer hereof, not having heard the argument in that case, did not sit therein, but adds now his full concurrence in the opinion of Fox, J., as adopted by a majority of the court. It was determined there that defendant was not doing business for profit, and that is the foundation of the dissenting opinion of BLAND, P. J., in the case in hand, he contending that the insurance was for profit and for that reason the certificate of insurance fell under the general insurance laws and not under the Act of 1897, now sections 1408, et seq., Revised Statutes 1899. Be it said for Judge BLAND, however, that his opinion was filed and this case certified to this court long prior to the opinion in the Westerman case.

The certificate of insurance in the present case was issued in 1898, after the Act of 1897 went into effect. The defendant was at the time licensed and doing business under the provisions of the Act of 1897. Into this contract we must therefore read the Act of 1897. A part of section 1408, Revised Statutes 1899, which is a part of the Act of 1897, Laws 1897, p. 132, reads as follows:

"Such associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein."

By this it will be seen that at the date of the issuance of this certificate of insurance the defendant was especially exempted from the provisions of the general insurance laws of the State, and therefore exempted from the provisions of section 7896, Revised Statutes 1899. This exemption, with the holding in the Westerman case to the effect that the business of the defendant was not for profit and was fraternal beneficiary insurance, saps the life-blood from the only contention made by the plaintiff herein. Following the law as declared in the Westerman case, it follows that the trial court was right in finding for the defendant, and its judgment should be and is affirmed.

All concur.