LOYAL AMERICANS OF THE REPUBLIC v. HATTIE McCLANAHAN.

Decided April 15, 1908.

1.—Appeal—Assignment of Error—Practice.

An assignment of error which is not a proposition in itself, and which is not followed by a proposition nor a statement from the record, will not be considered on appeal.

2.—Life Insurance—Benefit Societies—State Regulation.

Where, by the laws of a State, benefit societies are defined and required to comply with certain formalities before doing business in such State, a failure to comply with such statutory requirements will preclude them from the benefit of the liberal rules and laws which apply to such societies, and they will be regarded and treated as regular insurance companies.

3.—Same—Suicide as Defense.

A benefit society was incorporated in Illinois; it had subordinate lodges in Missouri, and issued benefit certificates therein, but it failed to comply with the

laws of Missouri defining and regulating such societies; the benefit certificates issued by it stipulated that the certificate should be void in case of suicide; the laws of Missouri provided that suicide should be no defense to a suit upon a policy of life insurance unless it be shown that the insured contemplated suicide at the time he made application for the policy; the constitution of the society provided that, in case of suit upon a benefit certificate, the certificate should be construed according to the laws of the State where issued. In a suit in this State upon such a benefit certificate issued in Missouri, the court properly disregarded the defense of suicide, and instructed a verdict for the plaintiff.

Appeal from the District Court of Jeff Davis County. Tried below before Hon. B. C. Thomas.

*H. H. Kilpatrick,* for appellant.—In determining whether appellant issued the certificate as a fraternal beneficiary association or as an old line insurance company, the court should have been governed by the laws of the State of Illinois, under which appellant was organized, the charter, constitution and bylaws of appellant, the application made by the deceased, and the certificate issued thereon. Tice v. Supreme Lodge of Knights of Pythias, 100 S. W., 519 (Mo.); Tice v. Supreme Lodge of Knights of Pythias, 102 S. W., 1013. (Mo.).

*J. A. Gillett,* for appellee.—The fact of suicide would be an immaterial issue unless appellant qualified to do business in the State of Missouri under the special statute relied on by it for protection, and the burden of proof on this issue was upon appellant and the evidence in its behalf wholly failed to discharge the burden. Gruwell v. National Council of K. & L. of Security, 104 S. W., 884, and cases therein cited, all being Missouri cases; Hudnall v. Modern Woodmen of America, 77 S. W., 84.

The court could not have found, as a matter of law, that appellant would not be liable to appellee under the contract if deceased committed suicide unless the court further found that appellant was in position to claim the protection of the special Missouri statute which it plead; and there were neither allegations nor proof upon which the court could have based the latter finding. Baltzell v. Modern Woodmen, 71 S. W., 1071; Dennis v. Modern Brotherhood, 95 S. W., 967; Herzberg v. Modern Brotherhood, 85 S. W., 986; Gruwell v. National Council, 104 S. W., 884; Hudnall v. Modern Woodmen, 77 S. W., 84; Wilson v. General Assembly, etc., 103 S. W., 109.

NEILL, ASSOCIATE JUSTICE.—The nature and result of this suit is thus stated in appellant's brief:

"This is a suit for $2,500, brought by appellee, Mrs. Hattie McClanahan, joined by her husband, D. L. McClanahan, to recover damages of appellant for failing and refusing to pay a certain benefit certificate in the sum of $2,000, issued to James Stone, deceased, son of Mrs. Hattie McClanahan, wherein said Mrs. Hattie McClanahan was named as beneficiary.

"Appellant answered that it was a fraternal benefit association organized and doing business under the laws of the State of Illinois,

and according to the laws of that State and the provisions of its charter that such 'association may make provisions for the payment of benefits in case of death resulting from disease, accident or old age of its members.'

"That the deceased made written application for the benefit certificate in question and that it was specifically agreed that such application should be a part of the contract of membership and indemnity; that one provision of said application so made a part of the contract was as follows: 'I agree that this order shall not be responsible under this contract if I shall die by suicide, whether sane or insane.'

"Appellant further plead that a condition of the incorporation of appellant was that the payment of a death benefit should be subject to a compliance with its rules and laws, and that the following rule was in effect at the date of Stone's death: 'This order shall not be liable for the payment of any benefit or benefits upon the benefit certificate of any member when such member shall die by his or her hand, whether sane or insane.'

"It further plead that by the terms of the benefit certificate issued to the deceased, it was a part of the contract that Stone should conform to the constitution, laws, rules and usages of defendant, and that a provision of its constitution and laws was as follows: 'If a member dies by self-destruction, the certificate of membership shall be void, but the Board of Directors, if in their judgment the circumstances attending such death warrant it, may at their option without prejudice pay any sum not exceeding the full amount thereof.'

"Appellant plead that the deceased committed suicide, and that in the judgment of defendant's Board of Directors the circumstances attending his death did not warrant the payment of any sum upon such benefit certificate, wherefore defendant denied liability.

"Appellee, by first amended supplemental petition, plead that, while appellant purported to be a fraternal benefit order, its benefit certificates were really life insurance policies and that it should be governed by the general laws applicable to insurance companies in the State of Missouri.

"It alleged that section 63 of the constitution and bylaws of the defendant company specified that 'When a suit at law or in equity shall be brought upon a benefit certificate of any benefit member, the contract of insurance of said benefit member with the order, shall be construed according to the laws of the State, province or territory in which the local assembly in which said benefit member first belonged is located,' and that the benefit member whose benefit certificate is involved herein first belonged to the local assembly at Piedmont, in the State of Missouri.

"Appellee further plead, chap. 119, art. 2, sec. 7896, of the Revised Statutes of Missouri of 1899, which is as follows: 'In all suits upon policies of insurance on life hereafter issued by any company doing business in this State to the citizens of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.'

"It further plead that the provisions of appellant's constitution and bylaws, plead by it, were not in effect when the certificate was issued.

"Appellant, by first supplemental answer, plead that it was a fraternal benefit society as defined in sec. 1408, Revised Statutes of the State of Missouri, 1899, and that sec. 7896 of the Revised Statutes of the State of Missouri, 1899, did not apply to appellant. Section 1408 so plead by appellant is as follows:

"'A fraternal beneficiary association is hereby declared to be a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each association shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent physical disability, either as the result of disease, accident or old age, provided the period in life at which payment of physical disability benefits on account of old age commences, shall not be under seventy (70) years, subject to their compliance with its constitution and laws. The fund from which the payment of such benefits shall be made, and the fund from which the expenses of such association shall be defrayed shall be derived from assessments or dues collected from its members. Payments of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon, the member. Such associations shall be governed by this Act and shall be exempt from the provisions of insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein. And such fraternal beneficiary association may create, maintain, disburse and apply a reserve or emergency fund in accordance with its constitution or bylaws.'

"The court instructed the jury to return a verdict for plaintiff, and defendant duly excepted. Over the objection of defendant, judgment was entered in accordance with the verdict returned. The appeal having been duly perfected, the cause is now before this court for review." As this statement is acquiesced in by the appellee, it is adopted by the court.

*Conclusions of Fact.*—The statutes of the States of Illinois and Missouri, mentioned in the foregoing statement, were introduced in evidence by the parties respectively pleading them. While the construction placed upon them by the courts of the respective States which enacted them is not specifically pleaded, nor the opinions of such courts introduced in evidence, it is assumed in the briefs of either party that they should receive the same construction by the courts of this State; and each party has cited certain opinions, in which it is claimed such statutes have been construed, for our consideration in determining the construction in their application to questions to be decided on this appeal. Though we can not take judicial notice of the construction placed by the courts of another State upon its statutes, for such construction should be proved (Missouri, K. & T. Ry. v. Wise, 106 S. W., 466; Suth. Stat. Const., sec. 192), we believe that

we are authorized by counsel of the respective parties to at least call to our aid, in passing upon the questions affected by such statutes, the opinions of the Supreme and Court of Appeals of Missouri referred to in their respective briefs, and to that end take them as evidence.

On June 15, 1901, the Royal Circle, then a corporation organized under the laws of the State of Illinois, having for its object and purpose the issuance of benefit certificates to its members and their beneficiaries, in addition to other objects, issued and delivered to James Stone, the son of plaintiff, its certain benefit certificate, No. 21196, so much of which as is pertinent to this case is as follows:

"The Royal Circle, Springfield, Illinois. .
"Benefit Certificate.
"This certificate is issued to James Stone, a member of circle 249, the Royal Circle located at Piedmont, Missouri, upon evidence received from said circle that said member is a contributor to the benefit fund of this order, upon condition that the statements and representations made by said member in the petition for this membership in said circle, and the statements certified to by him to the worthy medical examiner, both of which are filed in the supreme secretary's office and are made a part of this contract, are true, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said circle and fund, or that may hereafter be enacted by the Supreme Circle to govern said circle and fund, and which laws, rules and regulations are also made a part of this contract. These conditions being complied with, the Supreme Circle of the Royal Circle hereby promises and binds itself to pay out of its benefit fund to Hattie McClanahan, Mother, Two Thousand Dollars, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate: . . . Provided always, that the said member is in good standing in this order at the time of said death . . .: and provided also that this certificate shall not have been surrendered by said member, and another certificate issued at the request of said member, in accordance with the laws of this order. . . .

"In witness whereof, The Royal Circle has hereunto affixed its seal and caused this certificate to be signed by its Supreme President and Supreme Secretary and recorded in the records thereof at Springfield, Illinois, this, the 15th day of June, A. D. 1901.

"Joseph Truter, Supreme President.
"James Walsh, Supreme Secretary.

"Witnessed and delivered in our presence this, the 21st day of June, A. D. 1901.

"Conway C. Ivey, Worthy Ruler,
"Edward S. Seal, Worthy Secretary.

"I accept this certificate upon the conditions named herein.

"James Stone,
"(Signature of Member.)"

Said Royal Circle was organized under and in accordance with the

provisions of an Act entitled "An Act to provide for the organization and management of fraternal beneficiary societies for the purpose of furnishing life indemnity or pecuniary benefits to beneficiaries of deceased members or accident or permanent indemnity disability to members thereof, and to control such societies in this State and of other States doing business in this State, and providing and fixing the punishment for violation of the provisions thereof, and to repeal all laws now existing which conflict thereof. Approved and in force June 22, 1893."

The object of the order, as stated in its constitution and bylaws, adopted January 3, 1903, is as follows:

"Objects of the order shall be to establish a benefit fund from which shall be paid on the death of a member in good standing to families, heirs, blood relations, or to persons dependent upon him or her, as indicated in his or her certificate." "Benefit certificates shall be made payable only to families, widow, heirs, blood relations, or to persons dependent upon the member, and to such others as may be admitted by the law of the State of Illinois shall designate in his application." "This order will not pay benefits on members who commit suicide, whether sane or insane, but in all cases the amount contributed to the benefit fund by such member shall be returned and shall be paid to the family out of said fund in lieu of the benefit."

On February 16, 1904, the Fraternal Army of Loyal Americans of the Republic, also a corporation organized under the laws of the State of Illinois, and having for its object purposes of a kindred nature, consolidated with the Royal Circle, and after the consolidation the order was known as the Loyal Americans of the Republic, the defendant herein, and the members of the Royal Circle constitute the Royal Circle Department of the consolidated order. After the consolidation the defendant, by its constituted authorities, on February 16, 1904, issued to James Stone what is known as a "Benefit Certificate Rider," which was accepted, signed and attached to his benefit certificate by him, whereby he accepted membership in the order of The Loyal Americans of the Republic, and agreed that his contract of insurance should, in every respect, be subject to the terms and provisions of the contract of consolidation and the laws of the consolidated order, and recognized his application to the Royal Circle as a part of his contract with appellant. In his application for membership in the Royal Circle, *inter alia,* this agreement appears: "I further agree that this order shall not be responsible under this contract if I shall die by suicide, whether sane or insane. . . . I further agree to make punctual payment of all dues and assessments for which I may become liable, to conform in all respects to the constitution, laws, rules and usages of this order now in force or which may hereafter be adopted by the Supreme Circle thereof."

Defendant's constitution and bylaws, adopted August 24, 1904, contain the following:

"The objects of this order shall be: To establish a benefit fund from which shall be paid on the death of a member in good standing to the family, heirs, blood relations, or to other persons dependent upon him or her, as indicated in his or her certificate, a mortuary

benefit of not to exceed the amount of the certificate of the member; and from which shall be paid to members such assistance and relief in cases of accident or disability as shall be lawful to be paid under the laws of the State of Illinois, governing fraternal beneficiary societies."

"Benefit certificates shall be made payable only to the family, widow, heirs, blood relation, or to persons dependent upon the member, and to such other persons as may be permitted by the laws of the State of Illinois as the applicant shall designate in his application." As amended on March 7, 8, and 9, 1905, defendant's constitution and by-laws contain the following:

"The objects of this order shall be to unite fraternally white persons of both sexes between the ages of 18 and 55 years, who shall be physically and morally acceptable as risks and members subject to the limitations prescribed in the articles of association of the order, in the constitution and bylaws, and in the certificates and applications furnished to and accepted by such members; to establish and maintain funds for the upbuilding, support and perpetuity of the order and for the payments of benefits to its members and their beneficiaries; to institute local lodges or assemblies, by and through which persons properly qualified may become and may remain members of this order, and to prescribe secret work and means of recognition whereby members may recognize each other and act in harmony and in unity."

"The executive power of this order is vested in the National Congress of Loyal Americans of the Republic, which shall be composed of its officers and the representatives of the local assemblies. The National Congress of Loyal Americans of the Republic shall hold stated meetings, the first of which shall be held on the first Wednesday in October, 1897. The Supreme Executive Council shall be the representatives of the National Congress of Loyal Americans of the Republic during the intervals between the regular meetings, and shall do all that the National Congress of Loyal Americans of the Republic might do. And it shall have ritualistic form of secret work. The expenses of the order shall be paid by just and equitable assessments upon the members, by the sale of supplies, membership fees, dues and other fees or commission for services rendered."

"That the supreme authority is vested in a supreme body known as the National Congress of Loyal Americans of the Republic: That the defendant has subordinate bodies known as general assemblies and local assemblies: That local assemblies consist of not less than ten benefit members and report to and are under the management and control of said National Congress: That the general assemblies are composed of delegates from the local assemblies: That the National Congress consists of the supreme officers of the defendant of whom twenty are elected by ballot by the National Congress and six are appointed by the Supreme President and confirmed by the Supreme Executive Council, and delegates elected from and by the general assemblies: That the National Congress shall make laws for the government of the order not in conflict with the articles of association: That the National Congress shall hold regular sessions tri-annually

and special sessions on call: That the basis of representation as to the delegates elected by general assemblies is one delegate for each 500 benefit members or major fraction thereof, belonging to local assemblies to which end the various local assemblies are grouped together by the Supreme Executive Council, and each such group of local assemblies creates its general assembly from delegates elected by the several local assemblies in the group: That the members of the National Congress shall be the representatives of the entire membership and shall have complete charge of all affairs relating to the interest of the order."

"When a suit at law or in equity shall be brought upon the benefit certificate of any benefit member, the contract of insurance of said benefit member with the order shall be construed according to the laws of the State, province or territory in which the local assembly in which such benefit member first belonged is located."

Section 1409 of chapter 12, Rev. Stats. of Mo., A. D. 1897, is as follows:

"All such associations coming within the description as set forth in section 1408 of this article, organized under the laws of this or any other State, province or territory, and now doing business in this State, may continue such business: Provided, that they hereafter comply with the provisions of this Act regulating annual reports and the designation of the superintendent of the insurance department as the person upon whom process may be served, as hereinafter provided."

And section 1410 is: "Any such association coming within the description as set forth in section 1408 of this article, organized under the laws of any other State, province or territory and not now doing business in this State, shall be admitted to do business within this State when it shall have filed with the superintendent of the insurance department a duly certified copy of its charter and articles of association, and a copy of its constitution or laws, certified to by its secretary or corresponding officer, together with an appointment of the superintendent of the insurance department of this State as a person upon whom process shall be served as herein provided, that such association shall be shown to be authorized to do business in the State, province or territory in which it is incorporated or organized, in case the laws of such State, province or territory shall provide for such authorization; and in case the laws of said State, province or territory do not provide for any formal authorization to do business on the part of any such association, then such association shall be shown to be conducting its business within the provisions of this Act, for which purpose the superintendent of the insurance department of this State may personally, or by some person designated by him, examine into the condition, affairs, character and business methods, accounts, books and investments of such association at its home office, which examination shall be at the expense of such association, and shall be made within thirty days after demand therefor, and the expense of such examination shall be limited to $50."

There is no evidence in the record tending to show that appellant,

or either of the companies it consolidated, was ever admitted to do business within the State of Missouri under the provisions of the preceding section.

After James Stone became a member of the consolidated order he paid all dues and assessments made by the same and performed all other obligations imposed upon him by reason of his membership, and was a member thereof in good standing at the time of his death. He died in the town of Valentine, Jeff Davis County, Texas, on March 27, 1906, and the required proofs of his death, on forms provided and furnished by the defendant, were duly made and forwarded to the order, together with evidence of plaintiff's right as beneficiary in the certificate to the fund therein stipulated to be paid her on her son's death.

These are the facts and circumstances attending and showing the cause of James Stone's death: On March 27, 1906, at about 2 o'clock p. m., he tried to procure laudanum from a clerk at a store at Valentine, who refused to let him have it; about an hour afterwards he procured a four ounce bottle of crystalized carbolic acid from another clerk at the same store; between 3 and 4 o'clock he obtained a flask from a saloon, stating at the time he wanted to put some laudanum in it; and upon being asked by the bartender: "Are you going to sleep, Jimmie?" he answered, "Yes, I am going to take a good, long sleep." At about 4 o'clock the same evening he entered the room of John Gideon, and awaking him said, "That is all off, I have done it," at the same time putting the four ounce bottle of carbolic acid to his mouth, which Gideon took from him and immediately went for a physician; when he returned with Dr. Danforth they found Stone in his room dying and in a few minutes he expired. Dr. Danforth, who made an examination at the time of his physical appearance and condition, testified that his death was caused by carbolic acid poisoning. These facts and circumstances demonstrate beyond a reasonable doubt that Stone committed suicide.

*Conclusions of Law.*—As the first assignment of error is not presented in appellant's brief as a proposition, nor is any asserted under it, and is not followed by a statement as is required by the rules of this court, it will be regarded as waived. Yeager v. Neill, 64 S. W., 701; Swift v. Bruce, 71 S. W., 321.

It is contended by appellant that in view of the undisputed evidence the court erred in peremptorily instructing a verdict for the appellee, and in not directing the jury to return a verdict in its favor. This contention embraces all the assignments of error except the first, as well as the propositions asserted under them. As the general rule under the laws of Missouri, as expressed in chapter 119, article 2, section 7896, Revised Statutes, 1899, is that "In all suits upon policies of insurance . . . issued by any company doing business in this State (Missouri) to a citizen of this State, it shall be no defense that the insured committed suicide, unless it be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time of the application for the policy, and any stipula-

tion in the policy to the contrary shall be void," it having been alleged by the defendant that James Stone was a resident of and domiciled in the State of Missouri when the certificate sued on was issued, it was incumbent upon the appellant, in order to avoid the effect of such statute, to show that it was entitled to the benefit of laws and rules of construction pertaining to death benefit certificates issued by fraternal beneficiary associations. It may be conceded that it is a fraternal beneficiary association, as defined by section 1408 of the Revised Statutes of the State of Missouri, and we think, under the opinions in the case of Tice v. Sup. Lodge of Knights of Pythias, 100 S. W., 519, 102 S. W., 1013, it is; but this is not enough. As is said in Gruwell v. National Council of K. & L. of S., 104 S. W., 885:

"To receive the benefit of the liberal laws and rules of construction pertaining to death benefit certificates issued by fraternal beneficiary associations, defendant had the burden of pleading and proving, not only that it possessed the essential qualifications of such societies as prescribed in section 1408, Revised Statutes, 1899 (Ann. St., 1906, p. 1111), but also that, being incorporated under the laws of another State, it had been admitted to do business in this State in the manner provided in section 1410, Revised Statutes, 1899 (Ann. St., 1906, p. 1113). The evidence adduced by defendant falls short of showing that it was qualified for admission into this State as a fraternal beneficiary association; but, had that fact been made to appear, we still would be compelled to hold that the contract can not be considered otherwise than as one of regular insurance, since there is no proof in the record that defendant was admitted to do business in this State as a fraternal order. It averred in the answer that it was 'doing business in the State of Missouri by permission and license of said State,' and that fact, if it existed, should have been established by proof. When defendant admitted the execution of the certificate on which plaintiff based a cause of action as upon a policy of ordinary life insurance, and further admitted the fact of the death of the assured, the prima facie right of plaintiff to a recovery was complete, and could be defeated only by proof of defensive facts, and, obviously, the burden of pleading and proving such facts was cast on defendant, the party who affirmed their existence. It matters not that the certificate indicates on its face that it was issued by a fraternal beneficiary association, the form of the contract can not serve to confer a benefit which the law provides may be acquired only in the particular manner prescribed. Baltzell v. Modern Woodmen, 98 Mo. App., 153, 71 S. W., 1071; Logan v. Fidelity & C. Co., 146 Mo., 114, 47 S. W., 948; Brassfield v. Knights of Maccabees, 92 Mo. App., 102; Herzberg v. Modern Brotherhood, 100 Mo. App., 328, 85 S. W., 986; Johnson v. Sovereign Camp, 119 Mo. App., 98, 95 S. W., 951; Morton v. Supreme Council, 100 Mo. App., 76, 73 S. W., 259. It follows that defendant must be denied the benefit of the laws and rules relating to fraternal orders, and that the certificate before us must be treated as one issued by a corporation of another class."

Under this decision, there being no evidence tending to show that appellant had been admitted to do business in the State of Missouri

in the manner provided in section 1410, Revised Statutes of Missouri, 1899, the contract can not be considered otherwise than one of regular insurance to which the suicide of the insured is no defense.

There is no error in the judgment and it is affirmed.

*Affirmed.*