JULIA ANKRUM and WILLIAM ANKRUM, Appellants, v. THE COMMERCIAL STATE BANK OF RIDGEWAY, et al., Respondents.

In the Kansas City Court of Appeals, November 6, 1922.

1. **EVIDENCE: Pleading: Proof: Laws of Foreign State: Rule that Note Executed in One State and Payable in Another is Controlled by Law of the Latter Has no Application Where the Laws of Such State Were not Pleaded and Proven.** The rule that where a note was executed in one State and payable in another, the law of the latter should govern, does not apply so as to give force and effect to such foreign laws, unless the same are pleaded and proven as required by section 5336, Revised Statutes 1919.

2. **————: Courts: Judicial Notice: Laws of Foreign State: Courts of This State do not Take Judicial Notice of Judicial Decisions or Statutory Laws of Sister State.** The courts of Missouri do not take judicial notice either of the judicial decisions or of the statutory laws of sister States.

3. **MORTGAGES: Bills and Notes: Cancellation: Action to Cancel Notes and Coupons and to Enjoin Sale Under Deed of Trust Securing the Same, all of Which Were Executed in Missouri, Held**

Ankrum v. Comm. State Bank.

Governed by Laws of Missouri, Though Involving Property and Notes from Without Said State. In an action for cancellation. of notes and coupons which were executed in Missouri and to enjoin a sale under a deed of trust made in Missouri, *held*, that the case is governed by the laws of Missouri notwithstanding property and notes from without the State are in controversy, especially where the laws of the foreign State have not been pleaded and proven.

4. ———: ———: Priority: Preference: Where Series of Notes were Concurrently Executed and Secured by Deed of Trust, Held that First of Series to Mature had Preference Over Others Maturing at Different Times which Ranked According to Dates of Maturity. Where purchaser of land, on date of sale, assumed $9000 in vendor's lien notes and gave his own note in the form of a vendor's lien in the sum of $2300 securing all at said time by deed of trust, *held*, that the $2300 note being the first of the series of vendor's lien notes to mature the same had preference over the others, under the rule that notes executed at same time and maturing at different times rank according to dates of maturity.

5. ———: Exhaustion of Remedies: Injunction: Where Foreclosure of Deed of Trust was Attempted in Violation of Contract Made in Compromise of Pending Suit, Held Injunction Would Lie to Prevent Foreclosure. Where plaintiff in settling an action against two codefendants entered into a contract of settlement with one of them by the terms of which he was to prosecute the suit to judgment against the other non-resident codefendant and "exhaust all remedies by suit on said judgment" in another State before attempting to hold resident defendant, who had entered into compromise agreement, *held*, that an indifferent attempt to hold non-resident defendant by securing a judgment against him in a foreign State, but nothing further, is not sufficient compliance with the terms of the contract, and, in such a case, injunction will lie to prevent foreclosure of deed of trust in violation thereof.

Appeal from the Circuit Court of Harrison County.— *Hon. L. B. Woods*, Judge.

REVERSED AND REMANDED (*with directions*).

*James M. Johnson, Barlow, Barlow & Kautz* and *Donald W. Johnson* for appellants.

*Frisby & Frisby* for respondents.

ARNOLD, J.—This is a suit in equity. On November 21, 1917, plaintiffs instituted a suit in the circuit court of Harrison County, Missouri, by bill in equity against defendant bank and Frank M. Frisby, the purpose of which was to cancel, to the extent of $2300, a certain note in favor of the defendant bank in the sum of $4745.21, and to cancel to the extent of $161 each on five coupon interest-bearing notes, representing interest on said principal note to accrue thereafter in the sum of $322.16, each due respectively October 12, 1916, 1917, 1918 and 1919, and to restrain and enjoin defendants from enforcing a certain deed of trust executed October 12, 1915, by plaintiffs in favor of defendant bank on certain lands of plaintiff Julia Ankrum, located in Harrison County, Missouri, to secure the payment of said principal note and coupon notes for the reason that, by virtue of a certain contract entered into between plaintiffs and the defendant bank, on said October 12, 1915, whereby defendant bank agreed to "exhaust all remedies by suit on said judgment to be brought in Texas or by attachment in Missouri and in Texas against said Rio Grande Valley Development Company and that out of the proceeds of any and all moneys that may be realized on said judgment against the Rio Grande Valley Development Company, there shall be paid in the following order . . ." The contract then provided that out of such proceeds should first be paid the costs in Missouri and Texas, necessary and actual expenses in pursuing and exhausting said remedies and all attorney's fees, and all excess to be credited on the note and deed of trust above mentioned.

As shown by the record the facts and circumstances leading to the execution of said contract are as follows: On October 27, 1913, at Pharr, Hidalgo County, Texas, plaintiff William Ankrum entered into a certain contract for the purchase of 120 acres of land in said county and State. Prior to the date on which contract was made the said lands were owned by the Bankers Trust Company of Houston, Texas. On said date, said Trust Com-

pany by warranty deed conveyed the said 120 acres of land to the Rio Grande Valley Development Co., for a total consideration of $11,400. The purchase price was paid as follows: $800 for each 40 acre tract, or a total of $2400 cash, and vendor's lien notes for $9,000. The warranty deeds from the Bankers Trust Co.,. to the Development Co. reserve vendor's lien to secure the payment of five notes of $600 each on each 40-acre tract, or a total of $9,000, on the 120 acres, and these deeds were particularly described and serially numbered. These notes were executed by said Development Co., payable to the Bankers Trust Co., as additional security for $6,000 of these notes; the Development Co., on the same date, executing two deeds of trust on 80 acres of this same land, to secure payment thereof. Both the warranty deeds and the said deeds of trust were duly filed for record.

Pursuant to the terms of the contract by which William Ankrum purchased the 120 acres of land, he agreed to assume the $9,000 in vendor's lien notes and to execute his own note in the form of a vendor's lien in the sum of $2300. This note was executed as per contract, the Development Co., being the payee thereof; and thereupon the vendor Rio Grande Development Co., executed its warranty deed to Ankrum, subject to the said $9,000 vendor's lien notes. In addition, the deed also reserved to the Development Co., the vendor's lien covering the said note for $2300. The warranty deed from the Development Co., to Ankrum never was filed for record.

The Rio Grande Valley Development Co., by its agent W. D. Oliver, sold and endorsed said $2300 note to the defendant Commercial State Bank of Ridgeway, Mo.

Ankrum refused to pay said note and the bank brought suit thereon, and also filed two suits in equity to cancel alleged fraudulent conveyances of property from William Ankrum to Julia Ankrum, the other plaintiff herein. These three suits were pending in the circuit

court of Harrison County, Missouri, on October 12, 1915. On April 6, 1915, 80 acres of the 120 acres of land which William Ankrum had purchased from the Rio Grande Development Co., as above stated, were sold by the trustee under the deed of trust given by the said Development Co., to the Bankers Trust Co., to secure the payment of the first vendor's lien notes made to the Trust Company at the time said lands were purchased. At the said sale the 80 acres brought $1600. On October 12, 1915, the Commercial State Bank and Ankrum entered into the contract above referred to, whereby the three suits then pending in the circuit court of Harrison County, Missouri, where compromised and settled and whereby the Ankrums secured by deed of trust on Harrison County lands the total amount due on the $2300 note, and also an indebtedness of $1600 owing by Ankrum to said bank.

In said contract the defendant bank agreed to dismiss said suit as to the Ankrums on the $2300 note and to take judgment against the Rio Grande Valley Development Co. This was done at the October Term, 1915, of the Harrison County Circuit Court. At the time said contract was entered into, 80 acres of said land had been foreclosed upon and sold. Ankrum refused to pay the first two installments of interest on said note, and tendered payment of interest on the $1600 item of indebtedness included in said principal note, and the trustee advertised the security for sale.

The original petition was in two counts, the first of which was later dismissed by plaintiffs and the cause went to trial on the second count. Said second count alleges facts practically as detailed above, and sets out the compromise contract as an exhibit. Further the petition charges that the lands in Hidalgo County, Texas, were of the reasonable value of more than $15,000, and that the $2300 note, together with the $9,000 other vendor's lien notes, was a first lien upon the Texas lands, and that it became the duty of the defendant bank to enforce said

vendor's lien. The petition further charges "that said defendant bank wholly failed to exhaust its remedies under said vendor's lien note of $2300 and judgment, allowed said vendor's lien to lapse, and although the Rio Grande Valley Development Company was a prosperous and solvent company it took no steps to realize on said judgment against said development company, and that notwithstanding the failure of said defendant to perform said agreement and its breach thereof, the defendant, Frank M. Frisby, as trustee, as aforesaid, at the request of the defendant, the Commercial State Bank of Ridgeway, has advertised the said real estate for sale in pursuance of the power of sale contained in said deed of trust, and will, unless restrained and enjoined by this court, proceeded to sell the same on the 24th day of November, 1917, regardless of the failure of said defendant bank to comply with said contract and to perform its said duty to enforce said vendor's lien."

The prayer is for judgment of the court cancelling said principal note to the extent of $2300, so that the amount thereof shall be $2445.21, instead of $4745.21, and the cancellation of each of said coupon interest notes to the extent of $161, and that the defendants and each of them be enjoined and restrained from selling said property under said deed of trust by reason of any failure of plaintiffs to satisfy so much of said principal note or coupon interest notes as represent the $2300 item in said note; that the defendant bank, its officers, servants and agents, be restrained from transferring or otherwise disposing of said notes, or any of them, and for a temporary injunction. The temporary injunction was issued as prayed.

The defendant Frisby, the trustee named in the deed of trust, filed his separate answer in which the execution of the deed of trust, as alleged in the petition, was admitted, and then denies each and every other allegation thereof. For further answer, defendant Frisby alleges that his connection with this matter was merely that of

trustee in said deed of trust, and that he has no personal interest in the controversy.

The separate answer of defendant, the Commercial Bank of Ridgeway, admits its corporate existence and that the contract, as alleged in plaintiffs' petition, was entered into on October 12, 1915; admits the execution by plaintiffs of the deed of trust covering lands in Harrison County, Mo.; that said deed of trust was filed for record in the office of the recorder of deeds of Harrison Co., Mo., and recorded; and for further answer "denies each and every other allegation, matter, fact and thing in said petition contained."

The reply was a general denial. The cause was tried October 16, 1919, judgment was rendered by the court May 11, 1920, dissolving the temporary injunction and in favor of defendants for costs and damages. Plaintiffs appeal.

In support of their appeal plaintiffs charge, first, that "equity violates no law and does not assume to make a contract for the parties. It follows the law and upholds it and when it comes to the relief of one to whom the law cannot afford adequate remedy, it does not infringe the law, or impair its force, nor does it reconstruct the contract between the parties." There are several citations made in support of this position, but as the enunciation includes only well-known principles of equity, a discussion of it may be omitted. Paragraph 2, under plaintiffs' points and authorities, embraces the question that is decisive of this appeal, to-wit: That plaintiffs have no adequate remedy at law; that defendants, in the compromise contract, assumed the obligation of proceeding with reasonable diligence and skill to collect the judgment against the development company, and to exhaust the remedy afforded them by the vendor's lien against the Texas lands; and that their own evidence discloses an utter indifference to this obligation and an inexcusable neglect to take proper steps, or any steps, to collect the judgment. In other words, defendants failed ade-

quately to comply with that clause in the compromise contract wherein they agreed to "exhaust all remedies by suit on said judgment." If this be properly shown by evidence, equity will relieve plaintⁱffs from the consequences of such violation. The other points raised in the briefs of both parties are arguments pro and con on this point, and they will be determined by the solution of this question.

Defendants' contention is, first, that the laws of the State of Texas govern the construction and interpretation of the $2300 note, i. e., whether or not it ever was a vendor's lien, or whether any right ever passed to the defendant bank by virtue of the indorsement of said note, and whether or not it was an inferior lien, if a lien at all, should be decided in accordance with the Texas law. It is argued by defendants that the note in controversy was executed at Pharr, Texas, and made payable at Brownsville, San Antonio, or Houston, Texas; that the original contract of purchase of the lands was executed in Texas.

In this connection defendants cite McKinstrey v. Railroad, 153 Mo. App. 546, 553, wherein this court held that where a note was executed in one State and payable in another, the law of the latter should govern. Other authorities also are cited by defendants upholding this rule. However, we cannot hold that this rule governs in the case at bar for the reason that the Texas laws were not proved. Our statute, section 5336, Revised Statutes 1919, declares:

"The printed statute books of sister States and the several territories of the United States, purporting to be printed by the authority of such States or territories, shall be evidence of the legislative acts of such States or territories."

It is said in Madden v. Ry. Co., 192 S. W. 455, 456:

"The courts of Missouri do not take judicial notice either of the judicial decisions or the statutory laws of sister States, [Coleman v. Lucksinger, 234 Mo. loc.

cit. 14, 123 S. W. 441, 26 L. R. A. (N. S.) 934.] Hence they can only be brought to the knowledge of the courts of Missouri where their consideration is essential to the sustention of a cause of action or a defense, by being both pleaded and proven by the party relying on them. [Rashall v. Railway, 249 Mo. loc. cit. 516, 155 S. W. 426; Clark v. Barnes, 58 Mo. App. loc. cit. 671.]'' [See also Morton v. Supreme Council, 100 Mo. App. 76, 89; Hazelett v. Woodruff, 150 Mo. App. 534, 539.] The testimony tends to show that the contract involved in this suit was made in Missouri; the note and coupons which are sought to be cancelled in this action were executed in Missouri, and the deed of trust sought to be enjoined is a Missouri contract. We must hold, therefore, that this case is governed by the laws of Missouri.

It is in evidence that the $2300 note was the first of a series of vendor's lien notes to mature. This note was executed October 27, 1913 and matured March 1, 1914. The first of the other series of vendor's lien notes did not mature until October 27, 1914. Under the Missouri rule notes executed at the same time and maturing at different times rank according to dates of maturity. That is to say, the first maturing has preference. In Stewart v. Loan & Trust Co., 283 Mo. 364, the court said:

"The earlier maturing rule was first definitely promulgated in this State in Mitchell v. Ladew, 36 Mo. 526, 88 Am. Dec. 156, to the effect that notes secured by the same deed of trust have priority in the order in which they fall due. Subsequent rulings under which the minor facts are different, conform to this rule."

We, therefore, hold that as to the vendor's lien notes, the $2300 note in controversy had priority over all the others, under the Missouri rule.

This disposes of all of defendants' points save the eighth, wherein it is contended that "this record does not disclose that there ever was a time after the execution of the contract of settlement, October 12, 1915, when

a judgment against the Rio Grande Valley Development Co., could have been collected; in fact, it shows there were outstanding judgments during all of the time which were never collected.''

We have carefully read all the evidence in the case, as is required of us, and in our opinion there is ample evidence of record to support the contention that the judgment could have been collected in Texas. The remedies should have been exhausted by defendants, which seems not to have been done, defendants apparently preferring to rest upon the deed of trust on the Missouri lands. Under the contract wherein the litigation was settled between the parties, defendants assumed the obligation to plaintiffs of proceeding with reasonable diligence and skill to collect the judgment against the development company, and to exhaust all remedies afforded them by the prior vendor's lien against the land in Texas. As shown by their evidence, defendants did make an indifferent attempt in this direction by securing a judgment in Texas based upon the Missouri verdict, and there let the matter rest.. Their efforts in this direction fell far short of the obligation assumed by them under the terms of the contract. In such a case, injunction will lie to prevent foreclosure.

In this view of the case, we hold that the temporary injunction should have been made permanent, even though 80 acres of the Texas land had been sold to satisfy one of the other vendor's lien notes, when the priority was with the $2300 note. The remedies were not exhausted and the defendant bank is in no position to foreclose its deed of trust. The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in favor of plaintiffs, making the temporary injunction permanent only in so far as the $2300 note and interest thereon are concerned. It is so ordered.

All concur.