P. J. LEWELLING CONSTRUCTION COMPANY *v.* LONGSTRETH.

Opinion delivered December 11, 1922.

1. TRIAL—REPETITION OF INSTRUCTIONS.—Refusal of instructions which, in so far as they contained correct declarations of law, were covered by other instructions *held* not error.

2. EVIDENCE—OPINION OF WITNESS.—In an action for injuries to an employee, struck by a rock which fell from a rock quarry chute, in which it was alleged that the employer was negligent in that the sides of the chute flared out when they should have been perpendicular, and in that the sides were not sufficiently high, testimony of a witness, shown to possess the requisite knowledge and experience, as to the respect in which the chute was defective, without testifying that such defect constituted negligence, *held* not error.

3. MASTER AND SERVANT—DEFECTIVE INSTRUMENTALITY—NEGLI-GENCE.—Evidence that the sides of a chute were flared out, instead of perpendicular, and only 10 or 12 inches high, and that the higher the sides the less the probability that a rock would fall out of the chute *held* to sustain a finding that the employer was negligent in not having the sides of the chute higher and perpendicular.

4. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—In an action days before plaintiff was injured the employer gave orders to for injuries by rock falling from a chute testimony that a few days before plaintiff was injured the employer gave orders to have both sides of the chute extended *held* admissible as tending to show that the employer knew that the sides were not sufficiently high.

5. MASTER AND SERVANT—ASSUMED RISK.—Where the defendant's testimony tended to prove that plaintiff, a rock quarry employee, knew the danger of rocks falling from a chute, and

plaintiff offered no testimony of such knowledge, he will be held to have assumed the risk.

6. MASTER AND SERVANT—ASSUMED RISK.—If an employee knows and appreciates the danger of his employment, it is not necessary that he be warned of such danger to charge him with assumption of risk.

Appeal from Jackson Circuit Court; *Dene H. Coleman,* Judge; reversed.

*Coleman, Robinson & House, W. G. Riddick* and *Jno. W. & Jos. M. Stayton,* for appellant.

Appellant was not negligent. 80 Ark. 260; 46 Ark. 555; 118 Ark. 304; 18 R. C. L. sec. 122; 97 Ark. 181. Appellee assumed the risk of the danger which caused his injury. 135 Ark. 480; 135 Ark. 563; 129 Ark. 95; 134 Ark. 491; 123 Ark. 119; 130 Ark. 486.

*Neill Bohlinger,* for appellee.

SMITH, J. Appellant corporation operated a rock crusher, and appellee was one of its employees. The rock quarry was situated on the side of a hill. The crusher itself was erected on a level space at the bottom, or near the bottom, of the hill, while the rock was taken from the quarry at a higher elevation upon the hillside. Between the crusher and hillside, and over the crusher, a platform was erected, which was six to ten feet above the level of the ground on which the crusher was placed. From this platform a chute extended up the hillside toward the bed of the quarry. This chute was eighteen or twenty feet long. The upper end of it at the quarry bed was about ten feet higher than the lower end at the crusher platform.

Rock was taken from the quarry in carts to the upper end or mouth of the chute, and there dumped into the chute so as to slide down on the platform over the crusher. Two men worked on the platform immediately at the lower end of the chute, and shoveled the rock that came down the chute into the crusher bin. After passing through the crusher the rock went into a mechanical conveyor or elevator, which carried it up to a revolving

screen, through which it passed before being loaded into
wagons and hauled away.

Rock from the quarry was brought to the upper end
of the chute in carts drawn by mules. The capacity of
the carts was about one-third cubic yard of rock. The
driver of the cart backed it up to the mouth of the chute,
so that a man working there was able to dump the load
of rock into the chute, and the rock rolled down the length
of the chute to the men at the lower end, who threw it into
the crusher. The capacity of the crusher was something
like a cart-load of rock every two to five minutes. The
capacity of the chute itself was about seven cubic yards
of rock.

The men who worked at the bottom of the chute were
directly in the path of the rock coming down the chute,
and it was the custom not to dump rock into the upper
end of the chute until all of the preceding load had been
shoveled into the crusher, and it was also the custom for
the man who dumped the rock at the top of the chute to
warn the men at the bottom before dumping a load of
rock, in order that the men below might step aside. Ap-
pellee was not working at either end of the chute, and
was not injured there.

The chute was built of wood, and was six or eight
feet wide at the upper end and three or four feet wide at
the lower end. The bottom of the chute was concave,
and was lined with sheet-iron so that the rock would
slide down easier. The slope of the chute was so grad-
ual that rock dumped into it did not always slide to the
bottom of the chute before the sheet-iron was put in.
Appellee assisted in putting in this sheet-iron for the
chute.

Appellee was twenty-five years old, and had been
employed about the chute for several months before his
injury. He was employed as oiler, and his duties as such
required him to be around the machinery of the rock
crusher, the conveyor, and the screens, to see that the
machinery was well oiled, and he was also required to
clean up the rock which fell from the conveyor and the

screens. This last duty, while performed frequently during the day, required only a short time for each performance.

Appellee and another employee were engaged in cleaning up this loose rock, which had fallen from the conveyor and screens, by shoveling it into a wheelbarrow. Appellee was leaning on the wheelbarrow when one of the rocks, weighing thirty to forty pounds, dumped from the cart above, bounced out of the chute and hit him on the head, inflicting an injury of a most serious character.

The negligence alleged as a basis for the cause of action was that the chute was defectively constructed, in that its sides flared out, when they should have been perpendicular, and that the sides were not sufficiently high.

The court gave a large number of instructions at the request of the respective parties, none of which are objected to as erroneous. The court, however, refused to give instructions numbered 7, 17 and 18, requested by appellant, and this refusal is assigned as error. This assignment of error may be disposed of by saying that, in so far as these instructions contained correct declarations of the law, they were covered by other instructions which were given.

Over appellant's objection, the court permitted witness Warren to be asked in what respect the chute was defective, to which the objection was made that the witness had not shown himself qualified to answer, and because he should state how it was constructed and how others are constructed, and draw a comparison and let the jury decide whether there was a defect. The witness answered: "Well, in a way it was strong enough to support the rock, but the side being flared out gave the rock more opportunity to climb the sides and fall out as they started down the chute. They had a tendency to want to roll and of catching on the side at the bottom of the chute; and when they did they were apt to climb the side more with the sides being flared than they would if absolutely perpendicular."

We think no error was committed in permitting the witness to state in what respect the chute was defective. He was not asked to state, nor did he testify, that the defect constituted negligence. It would, of course, have been improper for him to have expressed that opinion.

The question asked was in what respect the chute was defective, and the witness showed that he possessed the experience and knowledge to answer the question. The chute was of simple construction; but we cannot say that one inexperienced in its operation must have known the effect of its having sloping sides. The master was not required to furnish any particular kind of appliance, and the witness did not say the master was negligent in furnishing the one in use. He stated a fact within his observation and experience, and the jury were left to say whether the use of the defective chute was negligent. *Holmes* v. *Bluff City Lbr. Co.,* 97 Ark. 181; *Little Rock T. & E. Co.* v. *Nelson,* 66 Ark. 494; *St. L. S. W. R. Co.* v. *Morris,* 76 Ark. 542; *Plumlee* v. *St. L. S. W. R. Co.,* 85 Ark. 488; *Dardanelle Bridge Co.* v. *Croom,* 95 Ark. 284; *Newport Mfg. Co.* v. *Alton,* 130 Ark. 542.

There was testimony that the sides of the chute were only ten to twelve inches high, and also testimony to the effect that the higher the sides the less probability there was that a rock would fall or bounce out of the chute; and we think the jury might have found from the testimony that appellant was negligent in not having the sides of the chute higher and perpendicular.

The court permitted testimony on the part of appellee that a few days before appellee was injured appellant gave orders to have the sides of the chute extended. Appellant objected to this testimony; but, as it tended to show that the sides of the chute were not sufficiently high, and that appellant knew that fact, and as the orders were given before the injury, the testimony was properly admitted.

The real question in the case is whether it should not be said, as a matter of law, that appellee was injured as a result of one of the usual and ordinary risks of the em-

ployment which he must be held to have assumed when he accepted his employment.

In proving the negligence of appellant, appellee calls attention to the testimony of appellant's witness Barlie, who testified that other rocks had fallen out of the chute, and that witness Barlie had cautioned appellee of the danger of his position by directing appellee to instruct a fellow employee nicknamed Sailor, who had had less experience about the crusher than appellee had had, to keep "back from under the platform when a cart of rock was dumped into the chute." The purpose of this warning which appellee was directed to communicate to Sailor was to warn him to gather up the loose rock at times when no rock was being dumped into the chute from the carts above. This testimony tends to prove that the chute was defectively constructed, but it also shows that appellee was familiar with its danger and appreciated the hazard thereof, and, if true, appellee was injured as a result of one of the usual and ordinary risks of the employment.

The testimony shows that the place and arrangement of the crusher, and its method of operation, was open and apparent; yet there may be some question as to whether or not appellee should have known, or did know, of the danger of the falling rocks, as we cannot say that the jury must necessarily have accepted Barlie's testimony as true, and for that reason we do not dismiss the case upon its reversal. Appellee's work did not carry him into a place of danger unless the rock bounced out of the chute. Appellee did not work at the immediate foot of the chute where rocks fell by gravity, and the only danger to him was that, by bouncing, some rock might fly out of the chute, and this was the way in which he was injured.

We have read appellee's testimony carefully, and he nowhere says that he did not realize and appreciate the danger to which his employment subjected him, although he made no admission of that fact, and if he had

this knowledge he must be held to have assumed the risk.

After Barlie and other witnesses had testified about the falling rock, and the apparent danger therefrom, appellee was recalled, and, as we have said, he did not deny that he had seen the rock falling in the manner in which he was injured, nor did he state that he did not appreciate the danger from the falling rock and the necessity of getting ''back from under the platform when a cart of rock was being dumped into the chute.''

The only question appellee was asked on this subject was: ''Had you been warned or cautioned by anybody connected with the Lewelling Construction Company that working under that conveyor was a dangerous place?'' and he answered: ''No sir, no, otherwise than some of the machinery might break or something.''

If appellee knew and appreciated the danger of his employment, it was not necessary that he should have been warned of its dangers before he would be chargeable with the assumption of its risk; and, as he did not deny the testimony of Barlie, set out above, we must conclude that he knew and appreciated the dangers of his employment, and, this being true, he is chargeable as a matter of law with an assumption of the risk of injury therefrom.

Under the case made the court should have directed a verdict in favor of appellant, and the judgment of the court below is reversed, and the cause remanded for a new trial.