PHILLIP LUGAR, RESPONDENT, v. MISSOURI PACIFIC RAILROAD COMPANY, APPELLANT.*

Kansas City Court of Appeals.    May 24, 1926.

*Corpus Juris-Cyc References: Courts, 15CJ, p. 925, n. 46; Evidence, 23CJ, p. 131, n. 10; Master and Servant, 39CJ, p. 714, n. 80; p. 920, n. 30.

*Sizer & Gardner, Claude Wilkerson* and *Paul Barnett* for respondent.

*Montgomery, Rucker & Hayes* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5000 and defendant has appealed.

The evidence shows that on the 8th day of April, 1924, plaintiff was employed as a hammersmith by the defendant in its shops at North Little Rock, Arkansas, and in the discharge of his duties was engaged in finishing a coach equalizer weighing several hundred pounds. In this work plaintiff was using what is known as a flatter tool. The equalizer by means of a power hoist was placed on the bottom die of a steam hammer. The bottom part of the equalizer was laid on the lower steam hammer die. The flatter tool was placed on the equalizer and was struck by the upper die of the steam hammer. The flatter tool is a piece of metal about eight inches wide, eighteen inches long and several inches thick with a long handle and weighing approximately twenty-five pounds. It has a flat surface on the bottom and a convex upper surface at the center. The upper steam hammer die strikes the convex surface. The power applied to the flatter tool tends to take out any inequalities in the surface of the equalizer.

Plaintiff testified that the upper and lower steam hammer dies were worn so that the surfaces were cupped and not level; that by reason of the worn place in the upper steam hammer die, when it was brought down in contact with the convex surface of the flatter tool it struck in such a way as to cause the latter to fly out of plaintiff's hands, breaking his arm. The defect in the lower die had nothing to do with the accident. Plaintiff further testified that he was experienced in the work that he was doing; that he had made complaints, covering a period of approximately a year, to his foreman and assistant foreman concerning the condition of the upper steam hammer die; that while this die continued to get worse and promises were made to him from time to time that it would be fixed, no steps had been taken to make any change in the condition of the die; that at the time he was injured the upper die was "pretty badly worn out." He was asked if on the day of the accident he realized "it was in a very dangerous condition," and he answered, "It was in pretty bad condition, yes." He further testified he realized it was dangerous and that notwithstanding his knowledge that the tool might slip and hurt him, he continued in his employment because the foreman told him, "I think this die will be all right for a little while."

The petition, after alleging the manner in which the work was being done by plaintiff, pleaded that "defendant negligently failed to keep said steam hammer and appliances thereof in a reasonably safe condition and had permitted the same to become worn and out of shape so that the surfaces of the dies of said hammer were not flat and even;" that defendant knew of such defective condition of said hammer and dies or by the exercise of ordinary care could have known of the same and the danger arising therefrom in time to have remedied the same before plaintiff's injury; that —

"Plaintiffs noticed the worn and uneven conditions of said dies before his injury and complained to the defendant concerning said condition, and defendant promised the plaintiff that it would repair the same as soon as the repair could reasonably be done, and directed plaintiff to continue to work upon and about such steam hammer until such repair could be made, and pursuant to such order and relying upon said promise to repair, plaintiff continued to work with said steam hammer and the dies thereof."

The petition then describes the way in which plaintiff was injured and the injuries he received and then pleaded *in haec verba* sections 7137 to 7142, inclusive, of the Statutes of Arkansas. [See Crawford & Moses, Digest of the Statutes of Arkansas (1921).] These statutes, among other things, abolish the common-law fellow-servant rule in certain employments under common carriers. They provide that in injuries or death to employees of Common Carriers suffered by reason of certain defects in equipment, etc., the Carrier should be deemed prima-facie negligent. They also provide that contributory negligence should not be a defense in suits of such employees, provided, "that the negligence of such employee was of a lesser degree than the negligence of such common carrier," etc., and should in no case be a defense where the injury or death is contributed to by the violation of any law enacted for the safety of employees. They also abolish the common-law rule in that State of assumption of risk in such employments.

The answer consisted of a general denial and pleas of contributory negligence and assumption of risk but does not mention any statute or law of Arkansas or Missouri. The reply consists of a general denial.

The defendant insists that the court erred in refusing to sustain its demurrer to the evidence and in refusing to give its instruction embodying the defense of assumption of the risk, and in support of its contention we are cited to certain decisions of the Supreme Court of Arkansas upon the question as to what constitutes assumption of risk in the State of Arkansas and construing the statutes pleaded by the plaintiff. These decisions undoubtedly hold that under the facts pleaded in the petition and proved at the trial plaintiff assumed the risk. [Fullerton v. Henry Wrape Co., 151 S. W. 1005; St. Louis Southwestern Ry. Co. v. Gant, 262 S. W. 654; Wortz v. Ft. Smith Biscuit Co., 151 S. W. 691; P. J. Lewelling Construction Co. v. Longstreth, 246 S. W. 19; St. Louis Southwestern Ry. Co. v. Compton, 205 S. W. 884.] The decisions of the State of Arkansas also hold that the statute pleaded by plaintiff abolishing the rule of assumption of risk in certain cases does not cover an employee working in the shops of common carriers, but applied only to an employee when injured while in the performance of some work in the line of his duty di-

rectly connected with and incident to the use and operation of a railroad, and that the words "use and operation of a railroad" relate to that "department of the service in which employees, at the time of their injury, are actually engaged in the running of trains or in work that is incident thereto or intimately connected therewith." [St. Louis, I. M. & So. Ry. Co. v. Wiseman, 177 S. W. 1139, 1141.] It therefore appears that despite the statutes of the State of Arkansas under the decisions of the courts of that State plaintiff assumed the risk and is not entitled to recover and defendant's demurrer to the evidence should have been given.

However, plaintiff insists that the decisions of the State of Arkansas were not pleaded by the defendant and that this court will place its own construction upon the statute of that State and in construing that statute it will follow the decisions of the courts of this State in construing what plaintiff claims to be a similar statute of this State, that is, the statute abolishing the Fellow-Servant rule in reference to those "engaged in the work of operating" a railroad (section 4226, R. S. 1919); that said statute of this State has been construed to cover employees other than those engaged in the actual operation of trains and includes a railroad employee working in a railroad shop, such as plaintiff in the case at bar. [See Powers v. Railway Co., 262 Mo. 701.]

It may be stated as a general rule that the law (statutory or common) of a foreign State will not be judicially noticed by the courts of a sister State but can be considered only insofar as they appear from the pleading and the evidence. [Witascheck v. Glass, 46 Mo. App. 209; Hartman v. L. & N. R. Co., 39 Mo. App. 88; Hollipeter, Shonyo & Co. v. Maxwell, 224 S. W. 113; Otto v. Pryor, 193 S. W. 28: Fidelity Loan Securities Co. v. Moore, 217 S. W. 286; Major v. Aetna Life Ins. Co., 260 S. W. 758; Rashall v. Railroad, 249 Mo. 509; Ankrum v. Commercial State Bank, 244 S. W. 951; Ginnochio v. Railroad, 155 Mo. App. 163; Bopst v. Williams, 229 S. W. 796.] But it is held in construing a foreign statute the courts of a sister State will follow the decisions of the highest court of the State enacting the statute if it approves the reasoning in such decisions, although such decisions are not judicially noticed and have not been pleaded or given in evidence. [Donald & Co. v. Hewitt, 33 Ala. 534, 550; Duryee v. Sunlight Gas Mach. Co., 132 N. Y. Supp. 407, 408, 409; Loyal Americans of the Republic v. McClanahan (Texas), 109 S. W. 973.] And in this State it is held that in any event our courts will follow the construction of the courts of a foreign State of its statutes. [Mosely v. Empire Gas & Fuel Co., 281 S. W. 762, 763; McMerty v. Morrison, 62 Mo. 140, 144; Farrar v. Railroad, 149 Mo. App. 188, 195, 196, 197; Lee v. Mo. Pac. Ry. Co., 195 Mo. 400, 422; Williams v. Railroad, 106 Mo. App. 61, 63, 65.]

There is authority holding that where the statute of a sister State is worded substantially the same as a statute of the State of the forum on the same subject, the judicial construction of the foreign statute will be presumed to be the same as that of the State of the forum in the absence of pleading and proof to the contrary. [Howe v. Ballard (Wis.), 89 N. W. 136.] From the Missouri cases cited it would seem that this is not the law in this State. However, it is unnecessary to pass upon this question for the reason that we have no law in this State the same as the law of Arkansas abolishing the defense of assumption of risk in certain railroad employments therein mentioned. Although the decisions of the State of Arkansas construing the statute pleaded in the petition were not pleaded by the defendant, from what we have said we must follow such decisions in construing the statute.

Although no decisions were pleaded on the question of what constitutes at common law assumption of risk in the State of Arkansas, plaintiff having relied in his petition upon the law of Arkansas, he must be confined thereto in this court. [Murphy v. Railroad, 248 Mo. 28.] Plaintiff insists that the petition states a cause of action "both under the common law of this State and under the statutory provisions of the State of Arkansas," and that he was privileged to submit the case under the common law of Missouri. The petition clearly pleads but one cause of action and that under the common law of Arkansas as modified by the Arkansas statutes. The Arkansas statutes pleaded do not create any new cause of action but apparently modify the common law of Arkansas in certain respects. Plaintiff in order to gain the advantages of certain Arkansas statutes pleaded them in connection with his cause of action, thus bringing himself under the laws of that State. The demurrer to the evidence should have been sustained.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.