Middendorf v. Schreiber.

---

MARY MIDDENDORF, Respondent, v. BONAVENTURE SCHREIBER, Appellant.

St. Louis Court of Appeals, October 1, 1910.

1. **MASTER AND SERVANT:** Contract of Employment: Action for Breach: Conflicting Evidence: Jury Question: Trial Practice. Where a jockey was employed under a contract for a definite period and the employer discharged him before the expiration of such period, in an action to recover the compensation provided for in the contract, brought on the theory the jockey was wrongfully discharged, it was a question for the jury to determine whether or not the jockey was incompetent, the evidence on that question being conflicting.

2. ———: ———: **Degree of Skill Required as Jockey.** The pro-

Middendorf v. Schreiber.

vision of a contract of employment of a boy as a jockey that he should perform the services in a good and workmanlike manner was satisfied by his possessing and exercising a reasonable degree of skill, knowledge and ability in that behalf, to be determined by the manner in which other ordinary skillful jockeys performed the same service, and did not require him to possess extraordinary skill, nor necessarily warrant that he should win races.

3. ———: ———: ———: Evidence: Rules of Race Courses Inadmissible. The rules of race courses, prescribing the qualifications, duties, and conduct of jockeys in the handling and riding of horses, and the powers and duties of the officials of such courses relative to precluding jockeys from riding, are not admissible in an action for breach of a contract, by which a jockey was employed for a definite period and who was discharged by the employer before the end of such period, although the contract of employment required the jockey to abide by the rules and regulations of the employer's stable, there being no suggestion that these rules were identical or connected with those of such race courses, and there being no evidence that the officials of such race courses sought to preclude the jockey from riding or declared him to be incompetent.

4. CONTRACTS: Rules of Third Persons: How Incorporated in Contract. Where rules of third persons are to be incorporated in contracts, they should at least be identified in some manner and referred to therein, as no one is bound by the rules and regulations of third persons except by his consent.

5. DAMAGES: Verdict for More Than Prayed for: Error Cured by Remittitur in Trial Court. While it is reversible error to enter a judgment on a verdict for a larger amount than the petition prays for, where the excess is remitted on motion for new trial, and judgment is given for the amount prayed for, the judgment will not be reversed.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*B. L. Matthews* for appellant.

(1) The court erred in refusing to permit defendant to introduce in evidence the rules adopted and in force by the various race courses upon which defendant was racing his horses and plaintiff's son was riding.

(2)   An act of a servant which injures or has a tend-ency to injure his master's business, interest or reputa-tion will justify his dismissal. Newman v. Reagan, 65 Ga. 512; Kidd v. Pill Co., 91 Ia. 261.   The master has a right to direct the manner in which the business shall be done as well as the result to be accomplished, or in other words not only what shall be done, but how it shall be done.   Vol. 26 Cyc., p. 966; Singer Mfg. Co. v. Rohn, 132 U. S. 518; Mound City Paint Co. v. Colen, 92 Mo. 221.   (3)   Under the instructions and the evi-dence the amount of damages assessed by the jury on the second count of plaintiff's petition being excessive could not be cured by remitting from the judgment the amount of thirty dollars.   Conley v. Railroad, 120 Mo. App. 652.

*Christian F. Schneider, Kurt Von Reppert* and *Henry Higginbotham* for respondent.

(1)   Under the contract in evidence herein, and which was the basis of this suit, respondent's son, Leo, agreed "to perform all jockey services in good and work-manlike manner, and to abide by all the rules and reg-ulations of the stable of the said B. Schreiber." There-fore, by the express terms of said contract the rules and regulations of the Western Jockey Club were ex-cluded.   Planing Mill Co. v. Brundage, 25 Mo. App. 268; Suits v. Taylor, 20 Mo. App. 166; Bittrick v. Gil-more, 53 Mo. App. 56; Iron Co. v. Holbeck, 109 Mo. App. 179; Bunetta v. Coal Co., 180 Mo. 241.   (2)   By remittitur of the excess of the verdict, the error, if any, was cured.   Comm. & Inv. Co. v. Real Estate Co., 120 Mo. App. 432; Schergen v. Const. Co., 108 Mo. App. 262; Shuch v. Pfenninghausen, 101 Mo. App. 697; Smoot v. Kansas City, 194 Mo. 513; Claudius v. Amus. Co., 109 Mo. App. 346.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of a breach of contract for hire. Plaintiff recovered and defendant appeals.

Plaintiff is the mother of Leo von Graeffen, a minor, and, his father being deceased, sues on a written contract made by her with defendant whereby she let his services to defendant as a jockey. Defendant is a breeder and owner of race horses and entered into a written contract with plaintiff whereby he employed her minor son, Leo von Graeffen, as a jockey to exercise and ride race horses for him for a term of three years from December 1, 1904, until December 1, 1907. It appears plaintiff's son Leo had been in defendant's services for about fourteen months before the contract was entered into between the parties. During the time plaintiff's son was in defendant's service prior to the date of the contract, his employment consisted in riding and exercising defendant's race horses, first in a walk then in a gallop, etc., to the end of training for the profession of a jockey. By the written contract sued upon, defendant employed plaintiff's son Leo to perform the services of a jockey for him from December 1, 1904, to December 1, 1907, and agreed to pay plaintiff a salary, for the services of her son, of twenty dollars a month for the first year; fifty dollars per month for the second year and one hundred dollars per month for the third year. In addition to the monthly salary thus stipulated, defendant agreed to pay the traveling expenses and board and lodging of plaintiff's son during the three-year period mentioned. It was stipulated therein on the part of plaintiff that said Leo von Graeffen should perform all jockey services in a good and workmanlike manner and abide by the rules and regulations of the stable of the said B. Schreiber, the said Leo von Graeffen to deport himself in a gentlemanly manner and to travel to such places as might be designated by B. Schreiber. Plaintiff's son continued in defendant's service for a considerable time and defendant paid

his salary promptly for the first year and a portion thereof for the second year. From March 1st to October 1, 1906, defendant paid plaintiff twenty-five dollars per month, or one hundred and seventy-five dollars in all, when, in accordance with the contract, he should have paid him fifty dollars per month for those months, or a total of three hundred and 'fifty dollars. On October 10, 1906, defendant summarily discharged the boy from his service and refused to furnish him employment thereafter or pay the amount due under the contract for the period between March 1st and October 1, 1906.

In the first count of the petition plaintiff prays a recovery in the sum of one hundred and seventy-five dollars for so much of her son's wages as were earned and unpaid during the months of March 1st, to October 1st, 1906. By the second count of the petition plaintiff seeks to recover the sum of thirteen hundred dollars as the wages stipulated for during the months of October and November, 1906, at fifty dollars per month and the twelve months from December 1, 1906, to December 1, 1907 at one hundred dollars per month, together with the reasonable value of the board and lodging of her minor son, which defendant agreed in the contract to furnish. The total sum sought to be recovered under the second count of the petition is $1565. There seems to be no controversy about the facts that plaintiff's son was summarily discharged by defendant and that he was not paid for the time above set forth. The defense proceeds on the theory that defendant was justified in discharging plaintiff's son for the reason that he proved to be an incompetent jockey. The evidence for plaintiff on this question tends to prove that plaintiff and her son fully performed all of the conditions of the contract on her part; and that the boy was a bright and competent jockey, possessed of the usual skill in that occupation for one of his years and experience. Defendant must have been thoroughly familiar with the boy's traits and qualifications at the time the contract was

entered into, for he had been in his service fourteen months at that time. However, the testimony for defendant is to the effect that plaintiff's son was incompetent and that while he was a good apprentice for the purpose of riding, exercising and training the horses he was unable to win a race. Sometimes this particular fault lies as much in the horse as in the jockey, but it is said in the present instance the horses were fast and the jockey was slow. The question thus made was, of course, for the jury.

By instructions the court informed the jury that though plaintiff had contracted her son should perform the services in a good and workmanlike manner, this did not necessarily warrant that he should ride the horses of defendant so that they should win races or that he possessed extraordinary skill in that behalf. And it was sufficient if the boy possessed and exercised that degree of skill, knowledge and ability as a jockey which is usually attained and employed by other jockeys; that a reasonable degree of skill, knowledge and ability in that behalf was sufficient, etc. There can be no doubt that such is the law of the case, for unless the contract expressly required more, the implied obligation goes to the extent only that the servant is competent to discharge the duties of the employment. This obligation, however, is to be determined by reference to the manner in which other ordinarily skillful jockeys performed the same service. [26 Cyc. 989; Wood on Master & Servant (2 Ed.), sec. 83, pp. 166, 167.] The instructions seem to be full and fair, for the jury were plainly told that if plaintiff's son failed to perform his work in a good and workmanlike manner or with that degree of skill ordinarily employed by other jockeys, then defendant was justified in discharging him. However, there is no complaint here of the instructions given, and none were refused.

The principal point relied upon for a reversal of the judgment relates to the fact that defendant, for

some purpose not disclosed, sought to introduce in evidence the rules of race courses prescribing the qualifications, duties and conduct of jockeys in the handling and riding of horses and the powers and duties vested in the officials of such race horses with reference to their right to preclude jockeys from riding, etc. These rules the court excluded. There is not a syllable of evidence in the case that the officials of any of the race courses referred to sought to preclude plaintiff's son from riding in races or declared him incompetent in any respect. What purpose these rules and regulations made to govern race tracks would have in the case, we are unadvised, for there is not a word contained in the contract between these parties which incorporates them as rules for the regulation of races to be ridden by plaintiff's son. It is true the written contract requires plaintiff's son to abide by all the rules and regulations of the stable of the said B. Schreiber, his employer, but there is no suggestion in the case that these rules are identical or in any manner connected with the rules of the various race courses over the country. If the rules of such associations are to be incorporated in private contracts between individuals, they should at least be identified in some manner and referred to therein. Persons are not bound by rules and regulations except by their consent. [Moshier v. LaCrosse County Agricultural Society, 90 Wis. 37.]

The jury awarded plaintiff a recovery of one hundred and seventy-five dollars on the first count of the petition and there is no complaint of this. On the second count the verdict was for thirty dollars in excess of the amount prayed in that count of the petition. The error seems to have occurred because of a miscalculation in awarding plaintiff a recovery for the board and lodging of her son during the months he was out of employment. It will be remembered that by the contract of hire defendant assumed the obligation of his board and lodging. On motion for a new trial the cir-

cuit court discovered the error and required a remittitur to be entered by which thirty dollars of the recovery under the second count was surrendered. This amount was promptly remitted by plaintiff and judgment was given accordingly for the amount prayed for in the petition. Defendant insists that the judgment should be reversed for this and says that it is reversible error for the jury to return a verdict for more than the amount prayed. There can be no doubt of the proposition suggested provided the judgment is rendered accordingly. Such was the case of Moore v. St. Louis & S. F. R. Co., 117 Mo. App. 384, 93 S. W. 869, relied upon, but it is not so where the erroneous amount awarded has been properly remitted as here. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.