**Ethel ROSS, Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Appellant.

No. 46252.

Supreme Court of Missouri,

Division No. 2.

April 14, 1958.

Rehearing Denied May 12, 1958.

Harry L. Bell, St. Louis, for appellant.

Charles A. Mogab, Barnhart & Sommers and Cleo V. Barnhart, St. Louis, for respondent.

BOHLING, Commissioner.

Ethel Ross recovered a $25,000 judgment against the St. Louis Public Service Company, a corporation, for damages arising

out of a collision between the automobile of plaintiff and a motorbus of the defendant. Plaintiff's petition charged primary and humanitarian negligence, but plaintiff predicated a verdict only on defendant's duty to stop or slacken speed under the humanitarian doctrine. Defendant appealed and contends plaintiff failed to make a humanitarian case, plaintiff's verdict directing instruction was erroneous, and the verdict was the result of bias, prejudice and misconduct of the jury.

Plaintiff's witnesses on liability were herself and Bessie G. Ross, her sister. Their version follows:

On September 6, 1955, a nice, bright day, between 8:30 and 9:00 a. m., plaintiff, approximately sixty-one years old, was northbound on Kingshighway in the City of St. Louis in her 1953 Special Buick sedan, intending to proceed east on Magnolia avenue to a service station and thence to Kiel Auditorium to attend a teachers'. meeting. Plaintiff's sister, also a teacher, occupied the front seat with plaintiff.

Kingshighway is 60 feet wide, has three lanes for northbound and three lanes for southbound traffic, with each lane marked and approximately 10 feet wide.

Plaintiff's Buick and the bus collided near an alley, about 20 feet wide, extending east from Kingshighway 420 feet north of Magnolia. Immediately south of the alley is a service station with a driveway meeting the alley and Kingshighway. Plaintiff's Buick was 15 to 18 feet long. The bus was 7½ feet wide.

As plaintiff approached Magnolia avenue the traffic light was at "Stop." Plaintiff, with two cars ahead of her Buick, stopped in the second or middle northbound lane opposite defendant's bus, which was in the curb or first lane with two cars ahead of it. Passengers were getting off the bus. Almost immediately after plaintiff stopped, the traffic light changed to "Go," and plaintiff and the other motorists started north across Magnolia. Plaintiff testified she did not turn east on Magnolia because she was in the wrong lane. When about 100 feet north of Magnolia, plaintiff looked in the Buick's rear view mirror, saw the bus was "just loading," put on the Buick's automatic signal and moved from the second to the curb lane. Plaintiff's sister extended her arm out of the right window as an additional signal for the change of lanes, glanced back and saw the bus was just ready to start, which was the last time she saw the bus until after the collision. Plaintiff stated she looked in the rear view mirror again and saw the bus for the last time prior to the collision when about 150 feet from the alley; that the bus was a little north of Magnolia, "He wasn't near me," "away back. I had plenty of room." Plaintiff proceeded straight north, about a foot from the curb, at 10 m. p. h. until near the alley, where she reduced her speed to 5 m. p. h., put on the automatic signal for a right turn, turned left about 2 feet, and then started making the right turn into the alley. There was no warning from the bus. When the post between the two doors of the Buick was at about the curb line of Kingshighway and the front fender and door of the Buick were in the alley, the right hand corner of the bus struck the right side of the Buick at the rear door and back of the rear door, shoved the rear of the Buick around so it was headed southeast, caused the right front door to jam, threw plaintiff against the steering wheel and left front door and her sister on top of her.

Plaintiff testified she was unconscious for a few minutes and was otherwise injured. She and her sister soon got out of the Buick, remained at the scene for a few minutes, returned to the Buick and, the sister driving, left before the police arrived.

Defendant's witnesses to the collision were Emma Ford, a passenger on the bus, Bernard J. Meurer, a motorist, and James E. Rockwell, the bus operator. Each testified that defendant's bus was in the curb lane and plaintiff's Buick was in the middle

or second lane of Kingshighway as the two vehicles proceeded north from Magnolia avenue, and that the Buick, traveling alongside or a little ahead of the bus, turned when near the alley from the middle lane into the curb lane in front of the bus, and the collision immediately followed. Mr. Meurer testified that the Buick, when about to the alley, "swung from the middle lane to make a right turn" without any signal; that the Buick, in the middle lane, was about 6 feet north of the bus, in the curb lane; that the bus was about 25 feet long, and 5 to 10 feet north of his car, which was in the middle lane following the Buick; and that the cars were traveling about 20 m. p. h. The bus operator estimated the speed at 15 m. p. h. He put the bus 20 to 25 feet from the alley when the Buick made a quick turn to the right in changing lanes. He immediately applied his brakes and hit his horn, but could not slacken the speed of the bus before it struck the Buick. When the Buick was at about a 45-degree angle the left front of the bus struck the Buick over the right rear wheel, pushed the Buick ahead about 10 feet, caused it to swing around, and the bus stopped in the curb lane up against the Buick, with about a foot of the Buick in the alley. Miss Ford testified she was standing, holding to a rod at the front of the bus, saw the Buick turn from the second lane in front of the bus, and "the bus driver had to stop right now and it threw me on the floor." Photographs of the bus and witnesses for defendant established that the left front corner of the bus had a small dent and a small scratch on the bumper.

Lonnie Wood, defendant's supervisor and witness, testified on cross-examination that the bus could have been stopped in 35 to 40 feet with safety at a speed of 20 m. p. h.

Defendant contends the judgment should be reversed outright as plaintiff failed to make a case and its motion for judgment under section 510.290 RSMo 1949, V.A. M.S., should have been sustained, because:

(a) The plaintiff's evidentiary theory showed an affirmative negligent act of "commission" by the defendant (defendant's motorbus "overtaking" the automobile driven by plaintiff), whereas the humanitarian doctrine proceeds upon the concept of a negligent act of "omission" by the defendant, citing McClanahan v. St. Louis Pub. Serv. Co., 363 Mo. 500, 251 S.W.2d 704, 706, 707; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 421 [3]; Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484; Edelen v. St. Louis Pub. Serv. Co., Mo.App., 279 S.W.2d 188, 190 [2].

(b) The evidence did not establish plaintiff's imminent peril, being insufficient to show the location, speed or actions of plaintiff's Buick in relation to the place of the collision, citing Paydon v. Globus, Mo., 262 S.W.2d 601, 603 [1]; Blaser v. Coleman, supra, 213 S.W.2d loc. cit. 421 [1, 3]; Banks v. Morris & Co., supra, 257 S.W. loc. cit. 483.

(c) If plaintiff came into a position of imminent peril, there was no substantial evidence to show that defendant could have prevented the collision thereafter, quoting from Bean v. St. Louis Pub. Serv. Co., Mo. App., 233 S.W.2d 782, 787 [11], and citing, among others, Branscum v. Glaser, Mo., 234 S.W.2d 626, 628 [4–6]; Paydon v. Globus, supra, 262 S.W.2d loc. cit. 604; West v. St. Louis-S. F. R. Co., Mo., 295 S.W.2d 48, 55; Steuernagel v. St. Louis Pub. Serv. Co., 357 Mo. 904, 211 S.W.2d 696, 697 [3, 4].

(d) Plaintiff was not entitled to the benefit of defendant's evidence as to the speed and stopping distance of the motorbus to prove her case, citing Meese v. Thompson, 344 Mo. 777, 129 S.W.2d 847, 850 [1]; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 74 S.W.2d 600, 603 [7, 8]; Fisher v. Gunn, Mo., 270 S.W.2d 869, 874 [3–5], and other cases.

The cited cases supporting defendant's contentions involved factual situations

somewhat like that tended to be established by defendant's witnesses Ford, Meurer and Rockwell; that is, briefly stated, that upon plaintiff coming into a position of imminent peril, the defendant could not thereafter, in the exercise of due care and with the means at hand, avert the casualty (McClanahan v. St. Louis Pub. Serv. Co., supra, 251 S.W.2d loc. cit. 708 [6], is illustrative), or where the evidence failed to establish an essential factual element of the humanitarian submission (Bean v. St. Louis Pub. Serv. Co., supra), or plaintiff was not entitled to the benefit of defendant's evidence favorable to plaintiff on some essential factual element to make out plaintiff's case (Meese v. Thompson, supra).

Defendant argues that plaintiff may not have the benefit of defendant's evidence that the bus, traveling 20 m. p. h., could be stopped with safety in 35 to 40 feet without accepting defendant's testimony that plaintiff turned from the middle lane so closely in front of defendant's bus that the collision could not be avoided.

■ The instant plaintiff offered no evidence on the speed or stopping distance of defendant's bus; and in these circumstances defendant's said evidence contradicted no evidence offered by plaintiff and was not at war with any fundamental theory of plaintiff's case. Pitt v. Kansas City Pub. Serv. Co., Mo., 272 S.W.2d 193, 195 [2]. See also Davis v. Kansas City Pub. Serv. Co., 361 Mo. 168, 233 S.W.2d 669, 674 [1]; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50 [2].

Defendant stresses Meese v. Thompson, supra, a truck-train collision case submitted on defendant's failure to slacken speed or warn under the humanitarian doctrine. The engineer, who could see plaintiff, testified plaintiff appeared to be stopping, but when the train was 60 to 80 feet from the crossing and plaintiff 10 to 12 feet from the track plaintiff started up all at once and he sounded short blasts of the whistle and applied the emergency brake. Plaintiff sought the benefit of the fireman's (he did not see plaintiff) estimate that the short blasts occurred about 500 feet from the crossing. In holding plaintiff could not take the 500 feet without taking the short blasts of the whistle, which was at war with his case on failure to warn, we observed [344 Mo. 777, 129 S.W.2d 850]: "If the fireman had seen the truck himself, at the time when he said the engine whistled, then plaintiff could have taken the distance at which he said he saw it without the whistle." The instant case is within the quoted observation, and does not present the situation existing in defendant's cases.

■ Under the humanitarian doctrine it is defendant's duty to act on the reasonable appearance of imminent peril and, if thereafter possible, call into action every means at hand to prevent the threatened injury. Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 900 [20]; Hall v. Clark, Mo., 298 S.W.2d 344, 349 [7].

■ Plaintiff argues that with the Buick traveling 5 m. p. h., while turning, and being half in and half out of the alley when struck, the Buick traveled 15 to 18 feet while the bus, at a speed of 20 m. p. h., traveled 60 to 80 feet and could have been stopped with safety in 35 to 40 feet. Under the evidence favorable to plaintiff the Buick was in the curb lane ahead of defendant's bus for more than 80 feet. The jury could find from the evidence that at some place and time prior to the impact plaintiff and her Buick were in imminent peril of being struck by defendant's bus; and also find that the bus, having the ability to stop with safety in 40 feet, could have been stopped without striking the Buick. See, among others, Peterson v. Tiona, Mo., 292 S.W.2d 581, 582 [2]; Caswell v. St. Louis Pub. Serv. Co., Mo., 262 S.W.2d 40, 45 [3, 4]; Dwinnell v. Thompson, Mo., 243 S.W.2d 988, 990 [2, 4]; Knebel v. Poese, Mo.App., 153 S.W.2d 844, 846 [3]; Woods v. Moffitt, 225 Mo.App.

801, 88 S.W.2d 525, 528 [7, 8]. The inference is that the speed of the bus could have been more readily slackened to permit plaintiff to enter the alley. The Peterson (292 S.W.2d loc. cit. 584) and Dwinnell cases, supra.

Defendant's presentation does not establish that the evidence was insufficient to sustain a humanitarian submission.

■ Defendant attacks the opening clauses of plaintiff's verdict directing instruction requiring the jury to find from the evidence "that the plaintiff was operating an automobile in a northwardly direction on Kingshighway and in a right hand turn therefrom so as to proceed eastwardly in the alley mentioned in evidence and if you find that the defendant's motorbus was being operated northwardly on Kingshighway and to the rear of the automobile operated by plaintiff and that said motorbus overtook and collided with the automobile operated by plaintiff * * *".

Defendant claims error "because said instruction commingled primary and humanitarian negligence; and said instruction was misleading to the jury in allowing the jury to consider both plaintiff's and defendant's evidentiary theories. Wholf v. Kansas City, C. C. & St. J. R. Co., 335 Mo. 520, 73 S.W.2d 195, 198; Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6, 8 [1, 2]."

The quoted portion of the instruction is not an abstract declaration of law covering any primary duty owed plaintiff by defendant as in the Reiling case, supra (see also Anderson v. Prugh, 364 Mo. 557, 264 S.W. 2d 358, 364 et seq.); and the instruction as a whole was not "double-barrelled" in submitting primary and, after a fashion, humanitarian negligence as did the instruction in the Wholf case, supra.

The instant instruction, following the quoted word "plaintiff," supra, continued and required findings, among others not here involved, as follows: "and if you find that prior to said collision * * * plaintiff became and was in a position of imminent peril and danger of being injured through a collision of said vehicles and * * * that the defendant's operator * * * could have seen that the plaintiff was in the aforesaid position of imminent peril, in time thereafter * * * to have * * * avoided the collision * * *" by stopping or slackening speed, and failed to do either and was thereby negligent, and that such negligence directly caused or directly contributed in part to cause said collision, etc. The instruction, as stated by plaintiff, follows an approved instruction in Wofford v. St. Louis Pub. Serv. Co., Mo., 252 S.W.2d 529, 532. See, too, the outline of the instruction approved in Caswell v. St. Louis Pub. Serv. Co., Mo., 262 S.W.2d 40, 41, 46. Different factual situations call for different language in verdict directing instructions. Defendant's authorities do not disclose that the instant instruction is vulnerable to defendant's attacks.

■ Plaintiff, in her petition, asked $25,000 damages. The only reference we find at the trial to the sum prayed is a statement by defendant's counsel in argument that plaintiff had sued for $25,000. The jury returned a unanimous verdict for $50,000. Defendant assigns error in the court's refusal of a new trial because of the bias, prejudice and misconduct of the jury against defendant in returning a verdict of double the amount prayed in plaintiff's petition.

Defendant moved for a mistrial on the stated ground upon the return of the verdict. Plaintiff's counsel thereupon asked leave to voluntarily remit $25,000 from the amount of the verdict, stating to the court that plaintiff's counsel, within ten days of the trial setting, sought to increase the prayer to $75,000, was informed by defendant's counsel defendant would take their full ten days to file a responsive pleading, and plaintiff did not amend but proceeded to trial. Defendant, in its brief, "agrees that this is correct." Motion for mistrial was overruled and judgment en-

tered for $25,000. Defendant in his brief and in argument on oral submission stated no claim was made that the verdict, after the remittitur, was excessive under the evidence most favorable to plaintiff.

In Carpentier v. Middlewest Freightways, Inc., Mo., 259 S.W.2d 816, 817, plaintiff had a verdict for $20,000, defendant's motion for new trial was overruled upon a remittitur of $11,000, and the $9,000 judgment was affirmed. We stated we had not found anything indicating passion and prejudice on the part of the jury and that the trial court had ruled the question. In Amos v. Southern R. Co., Mo., 273 S.W. 2d 155, 161 [4], plaintiff had a judgment for $108,000 and this court affirmed for $38,000 conditioned upon the entry of a remittitur of $70,000. Consult Middendorf v. Schreiber, 150 Mo.App. 530, 131 S.W. 122 [3]; Butler v. Equitable Life Assur. Soc., 233 Mo.App. 94, 93 S.W.2d. 1019. [12, 13]; State ex rel. Welch v. Morrison, 244 Mo. 193, 148 S.W. 907, 913 [11], 914(11). And, with respect to defendant's statement that plaintiff's evidence would sustain a verdict for $25,000, see Markovich v. Kansas City Pub. Serv. Co., Mo., 266 S.W.2d 641, 646 [6].

Defendant's contention is overruled.

Plaintiff filed a motion to dismiss which was ordered taken with the case. Let it stand overruled without prejudice.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.