Hazel L. SCOTT, Plaintiff-Respondent,

v.

Jerry V. NASH and Geraldine Nash, Defendants-Appellants.

No. 7985.

Springfield Court of Appeals. Missouri.

March 22, 1962.

Breuer, Northern & Crow, Ralph M. Crow, Eugene E. Northern, Rolla, Dorman L. Steelman, Salem, for defendants-appellants.

Routh & Decker, Dewey Routh, Rolla, for plaintiff-respondent.

RUARK, Presiding Judge.

This is another near-head-on collision in which each party contends the other was on the wrong side of the road. The jury found against plaintiff Scott on her petition and in favor of defendant Geraldine Nash on her counterclaim. Thereafter the court sustained plaintiff's motion for new trial, and defendants have appealed.

The collision occurred south of Rolla on a straight (north and south) farm-to-market gravel road. At the scene of the collision the road, going south, climbs up out of a valley on a long, steep hill. Once over the crest of the hill, the grade, coming from the south, is not so steep. The collision point was on the steeper north slope, some 175–185 feet (this is only approximate) down north of the crest of the hill. Along parts of this road were "tracks" or places approximately 18 inches wide made by the wheels of various cars. One of these tracks was on the east side of the road, one on the west, and one down the approximate center. There is evidence that, in or near the immediate vicinity of the collision and north of it, on the west side of the road the gravel had washed out, leaving rocks, and that the road there was rough. Both plaintiff and defendants appear to have been familiar with the road.

Mrs. Scott, the plaintiff, was driving her Dodge south, up the hill, at a speed she said was less than 25 mph (defendant Geraldine Nash said 30–35 mph). According to plaintiff's contention, she was on her own (west) side of the road. She says that the defendants' automobile came (from the south) over the crest of the hill at a speed from 50 to 60 mph, partly on *her* (west) side of the road, veering to its left; that defendants' car was "sort of bounding," leaping, or jumping; that she took her foot off the accelerator and was almost stopped; and that the Nash car continued its course until almost upon her, when it turned sharply farther to the left.

The Nash car was a Mercury. Defendants' version is that this Nash Mercury belonged to the defendant Geraldine but was being driven by her husband, Jerry. They were going (north) to work in Rolla. As they came over the crest of the hill, the Mercury had its right wheels in the extreme east (right-hand) track and its left wheel in or near the center track. The Mercury was traveling (by Jerry) 40–50 mph or (by Geraldine) 40–45 mph. Defendants say that plaintiff Scott was on *their* (or east) side of the road. Defendant Jerry said he waited, thinking plaintiff would move over, and as the cars neared he turned his wheels to the left (there was a ditch and culvert on the right). Defendant Geraldine said that as they came over the crest of the hill she screamed "Jerry." He swerved to the left and slammed on his brakes sufficiently to throw her against the windshield.

The cars collided somewhere near the center of the road. The majority of the debris was a little west of the center of the road. Damage to the cars indicated that the force of initial impact was taken by the right side of the front of both cars.

Plaintiff's instruction 1 hypothesized her own highest degree of care and Geraldine's ownership of and presence in the Mercury automobile, and submitted on negligence (in the conjunctive) of Jerry in (a) excessive speed, (b) failing to drive on the right half of the road, and (c) failing to have his automobile under control.

Plaintiff's instruction 2 made the same hypothesization and submitted on the fact that Jerry failed to drive on the right half and while so driving failed to swerve or turn the Mercury away from plaintiff's automobile and thus avoid collision.

Plaintiff's instruction 8 told the jury that if the Mercury was owned by defendant Geraldine and she was riding in and had control of the car, any negligence of her husband was imputable to her, and directed a verdict on the counterclaim.

Defendants submitted and had given verdict-directing instructions 4 and 5, which are as follows:

## "INSTRUCTION NO. 4

"The Court instructs the Jury that if you find and believe from the evidence that on the occasion mentioned in evidence Defendant Geraldine Nash was a passenger in the motor vehicle driven by Defendant Jerry Nash and that at all times herein mentioned she was exercising the highest degree of care for her own safety and the safety of others, if you find she was; and if you further find that the motor vehicle in which she was riding was being driven North and on the East side of the roadway mentioned in evidence; and if you further find and believe from the evidence that when the motor vehicle in which Defendant Geraldine Nash was riding had reached the crest of the hill mentioned in evidence, the driver of said motor vehicle immediately saw the motor vehicle driven by Plaintiff Hazel Scott approaching on the East side or Plaintiff Hazel Scott's left hand side of said roadway, if you find the facts so to be; and if you further find and believe from the evidence that it then reasonably appeared to Defendant Jerry Nash, who was on the proper side of the road, that there would be a collision unless he turned to the left, and acting upon such appearance, he swerved the car he was driving to the left, and in doing so did what a person exercising the highest degree of care would have done under similar circumstances, if you find all these facts so to be; and if you further find that said collision was directly caused by the failure of Plaintiff Hazel Scott in driving her motor vehicle to drive the same on her right hand side of the roadway, and that such failure on her part, if any, was negligence; and if you further find that the negligence of Plaintiff Hazel Scott, if you find she was negligent, directly and proximately caused Defendant Geraldine Nash's injury or injuries, if you find she was injured; and if you further find that Defendant Geraldine Nash was not negligent in any manner as set forth in other instruction(s) herein; then if you find all the facts so to be you will find the issues for Defendant Geraldine Nash on the counterclaim of Defendant Geraldine Nash and against Plaintiff Hazel Scott on Plaintiff's petition.

## "INSTRUCTION NO. 5

"The Court instructs the jury that it is the duty of the operator of a motor vehicle upon the highways of this state to drive upon the right half of the roadway. But the Jury are further instructed that an operator of a motor vehicle meeting an automobile coming from the opposite direction may be justified, under some circumstances, in turning out to the left instead of to the right to avoid a collision.

"And in this connection you are further instructed that if you find and believe from the evidence that at the time and place of the collision mentioned in the evidence Defendant Jerry Nash was operating his vehicle upon the right half of the roadway, if you so find, and immediately before the collision saw the automobile driven by Plaintiff Hazel Scott being operated on the same side or Plaintiff's left side of the roadway, if you so find, and if you further find and believe that it reasonably appeared to Defendant Jerry Nash that there would be a collision unless Defendant Jerry Nash turned to the left, and, acting upon such appearance, Defendant Jerry Nash turned the automobile he was driving in that direction, if you so find, and in doing so did what a person exercising the highest degree of care would have done under similar circumstances, then Defendant Jerry Nash did not violate the law of the road and was not guilty of negligence, and you will find the issues for Defendants."

Since the trial court assigned no reasons in granting the new trial, the respondent has the procedural burden. Supreme Court Rule 83.06(b), V.A.M.R.; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316; Hall v. Brookshire, 364 Mo. 774, 267 S.W.2d 627. And the sole grounds asserted in defense of the ruling appealed from are errors in the giving of the two foregoing instructions 4 and 5.

It will be noted that these are both verdict-directing instructions on plaintiff's petition and defendants' counterclaim; that instruction 4 hypothesizes highest degree of care of Geraldine as a passenger; and that instruction 5 hypothesizes the highest degree of care of Jerry after it appeared there would be a collision. It does not mention Geraldine.

Respondent contends that instruction 5 submits an emergency without hypothesizing any freedom from negligence which contributed to cause the emergency; that both instructions absolve appellants from all negligence if Jerry Nash turned to the left immediately before the collision, and thus ignored negligence of Jerry in driving at an excessive speed and in failing to keep defendants' automobile under control; that the two instructions conflict as to when the hazard arose; and that both instructions omitted a requirement for the finding of essential facts, either as to the affirmative defense to plaintiff's petition or as to defendants' counterclaim.

Appellants argue that instruction 4 submitted all the essential elements necessary for a recovery by Geraldine, and if plaintiff deemed it inadequate she should have offered a clarifying instruction; that instruction 5 was simply a converse of plaintiff's instructions 1 and 2; that since plaintiff submitted in the conjunctive, defendants were entitled to converse any one of plaintiff's specifications and submit a verdict-directing instruction on that ground alone; that it was not necessary to hypothesize facts dealing with the creation of the emergency because "it may reasonably

be inferred" that defendants did not create it; that all the instructions must be read together, and any omissions in defendants' 4 and 5 were cured by plaintiff's instruction 8 concerning imputed negligence.

The case has been ably briefed and argued by counsel on both sides. Since most of the argument concerns instruction 5, we will consider it first.

As to whether instruction 5 is an "emergency" or "converse" instruction, we think little is to be gained by attempting distinctions in nomenclature or classification. The instruction is converse in the sense that it presented the opposing view as to which party was on the wrong side of the road; but it goes further and directs a verdict "on the issues" if, because of an emergency thereby created, Jerry Nash turned to the left to avoid collision.

The emergency doctrine is not, in and of itself, a defense; it is a factor to be considered. An integral part of the doctrine is that the emergency shall not have been caused or contributed to by the one who asserts the emergency. The doctrine has no application and may not be asserted if the emergency arose wholly or partly from the negligence of the one who seeks to invoke it. The submission of the emergency situation necessitates the hypothesizing of the conduct (in respect to care) of the one asserting it before the emergency situation arose. Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417; Browne v. Heeter, Mo., 267 S.W.2d 666; Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, 547; Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709; Leek v. Dillard, Mo.App., 304 S.W.2d 60; Bowman v. Heffron, Mo., 318 S.W.2d 269.

True it is that where the findings as directed in an emergency doctrine instruction necessarily include and dispose of the *only* negligence which, under the evidence, could be involved, no further hypothesization of lack of negligence in pro-

ducing the emergency is required.[1] But that is not the situation here. The plaintiff contended and had submitted in instruction 1. that (a) Jerry Nash was driving at an excessive rate of speed, (b) he did not have his automobile under control, and (c) he drove on the wrong side of the road. She also contended, and had submitted in instruction 2, that (d) while driving his automobile to the left of the center of the road he failed to swerve or turn his car to avoid the collision.

There was evidence from which the jury *could* have found that Jerry was driving at an excessive rate of speed considering the terrain and the circumstances as he came up to and over the crest of the hill. Plaintiff said he was going 50-60 mph. Defendant Geraldine said that when he slammed on the brakes the force threw her against the windshield and her face was cut. There was also evidence from which it could be found that his speed was excessive *after* he came over the crest and saw the plaintiff's car. He says that when he first came over the hill he saw the plaintiff "between 50 and 75 foot, below this driveway" (all the evidence shows the driveway to have been 175 to 185 feet below the crest). "I waited, thinking she would get over." Plaintiff said that from the time the defendants' car appeared over the crest until the collision her car moved only the distance of one car length. There was also evidence (by plaintiff) that Jerry did not have his car under control because his car was "leaping" and "bounding" and was gradually veering to the left as he came over the hill and up until immediately before the crash when he swerved abruptly to the left. We are not saying that the jury *should* have found excessive speed or failure of control, but such facts, if true, should not have been excluded from the jury's consideration in arriving at their verdicts on the petition and the counterclaim. Yet under instruction 5 the sole

thing the jury had to consider was that Jerry was on the right side, Mrs. Scott was on the wrong side, that it reasonably appeared there would be a collision, that Jerry turned to the left and *in so turning* was exercising the highest degree of care. If it found these things, defendant Geraldine was "home free" regardless of any antecedent negligence which helped to produce the emergency, and regardless of negligence of Jerry in continuing in high speed or lack of control after it became apparent to him that plaintiff was on the wrong side of the road.

We find instructions similar to this were given in Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, and in Lewis v. Zagata, supra, 166 S.W.2d 541. In the Huckeba case it was said the instructions did not conflict; but the plaintiff submitted only one ground of negligence, viz., not driving on the right side of the road, and apparently no counterclaim was involved. Furthermore, it was the defendant who was complaining. The Zagata case was an appeal on a defendant's verdict with no counterclaim involved in the case. The only negligence submitted by defendant's instruction was driving on the wrong side of the road. A more nearly proper presentation of defendant's theory we think was made in (instruction A) Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736.

■ A verdict-directing instruction submitting an affirmative issue must require the finding of all essential facts necessary to establish the legal proposition upon which the right to a verdict is based. Raymond, Missouri Instructions to Juries, vol. 1, § 125; May v. Bradford, Mo., 348 S.W.2d 133(3); Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102; Willard v. Bethurem, Mo.App., 234 S.W.2d 18; Rohde v. St. Louis Public Service Co., supra, 249 S.W.2d 417; Levin v. Caldwell, Mo., 285

---

1. Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Jones v. Hughey, Mo., 283 S.W.2d 550; Lukitsch v. St. Louis Public

Service Co., 362 Mo. 1071, 246 S.W.2d 749; Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709.

S.W.2d 655; McDaniel v. McDaniel, Mo., 305 S.W.2d 461; see Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14.

Appellants argue that since the plaintiff's submission was in the conjunctive, the defendants were entitled to pick out any one of the conjunctive submissions and submit a converse as to that particular fact or issue.[2] Following appellants' theory, we can see possibilities of a verdict being rendered which is based upon a completely phantom issue.

Disregarding for the moment the fact that the instruction affected the counterclaim, and considering it only as applied to the petition, and assuming it is justified by the evidence, we think that if it were only a converse to oppose a single essential fact it would be proper. Liebow v. Jones Store Co., Mo., 303 S.W.2d 660; Campbell v. Evens & Howard Sewer Pipe Co., Mo.App., 286 S.W.2d 399; Frechin v. Thornton, Mo., 326 S.W.2d 122; Oshins v. St. Louis Public Service Co., Mo., 254 S.W.2d 630.

■ But one may not, under the guise of a converse instruction, direct a verdict upon a finding in respect to one particular issue and in so doing exclude all other factual issues upon which a verdict might be returned (Willard v. Bethurem, supra, 234 S.W.2d 18), or pick up and eliminate an essential element by means of a "catch-all" phrase. Ritchie v. Burton, Mo.App., 292 S.W.2d 599. Nor may an instruction single out a particular fact and give it undue prominence in discrimination of other facts on the same issue, even though the instruction be a correct statement of the law. Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d

517, 523; Shaffer v. Sunray Mid-Continent Oil Co., supra, 336 S.W.2d 102, 108. Nor may one so constrict his verdict-directing instruction as to make it in conflict with other instructions.[3]

■ It is to be noted that instruction 5 does not specifically charge Hazel Scott with negligence. It hypothesizes and directs a verdict upon only the fact that the driver of defendants' car saw the plaintiff's car on its wrong side of the road. It may be understood from that that Hazel *was* on the wrong side of the road (how far and how long?), but in view of the evidentiary showing in respect to the center wheel tract (which possibly both parties used) and the rough road, we think there is some doubt as to whether this being on the wrong side of the road automatically pointed to negligence as a matter of law on the part of Hazel. Of course, negligence of Hazel Scott was an essential element of Geraldine's recovery on her counterclaim. We think it should have been specifically charged.

■ We note also that instruction did not negative or refer in any manner to the care or negligence of Geraldine, the owner of the car. Appellants say that this and other objections are cured by plaintiff's instruction 8 on imputed negligence. Omissions of essential elements in a verdict-directing instruction cannot be cured if they make the instruction conflict with other instructions.[4]

■ All instructions are to be read and construed together (McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37, 40; Johnson v. Flex-O-Lite Manufacturing

---

2. Although a verdict upon a conjunctive submission may be upheld or "tolerated" even though the evidence may not sustain some particular portion of the submission. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461; Lindquist v. Kansas City Public Service Co., 350 Mo. 905, 169 S.W.2d 366.

3. Sauer v. Winkler, Mo., 263 S.W.2d 370; Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479; Willard v. Bethurem, Mo.App., 234 S.W.

2d 18; Harris v. Rowden, Mo., 305 S.W. 2d 25; Wiseman v. Jackson, Mo.App., 309 S.W.2d 356; see Jones v. Hughey, Mo., 283 S.W.2d 550.

4. Raymond, Missouri Instructions to Juries, vol. 1, § 125; Banta v. Union Pacific Railroad Co., 362 Mo. 421, 242 S.W. 2d 34, 42; Elmore v. Illinois Terminal Railroad Co., Mo.App., 301 S.W.2d 44; Hatfield v. Thompson, Mo., 252 S.W.2d 534.

Corp., Mo., 314 S.W.2d 75), and the test of interpretation is how an ordinary man would understand them. Lewis v. Zagata, supra, 166 S.W.2d 541, 545; Spritz v. St. Louis Public Service Co., Mo., 341 S.W.2d 790, 793. We believe that a jury reading this instruction 5 could well believe that if the facts were that Hazel Scott was on or partly on her wrong side of the road when the defendants' car came over the crest of the hill on their right side of the road, and it looked as though a collision might occur, and defendant Jerry turned to the left to avoid a collision, but it did occur, then Geraldine was entitled to a verdict on both the petition and the counterclaim regardless of all other issues which were involved. We do not believe that this is the idea which the defendants' lawyers had, diligent as they were in the utmost care to protect their clients, but this is the way the jury could have understood it.

It is frequently stated that the appellate court in passing upon the question of whether the trial court committed error in the granting of a new trial will be more liberal in affirming the action of the trial court than they would be had the questions involving such claim of error been presented to them for reversal or remand. Shaffer v. Sunray Mid-Continent Oil Co., supra, 336 S.W.2d 102; Trump v. Ballinger, Mo., 317 S.W.2d 355.

Because of error in the giving of instruction 5, we find no error in the court's action in granting a new trial. Since we have so decided, there is no need of any involved discussion of instruction 4. We have already indicated that some of the disabilities here mentioned may apply to it. These questions have been pointed out in the briefs, and no doubt upon retrial the same questions will not arise. But since the case is to be retried we are constrained to call attention to one other thing concerning which no point has been raised. Instruction 4, after having already hypothesized that defendants' car was on its right (east) half of the road, then interjected the statement that it "reasonably appeared to Defendant Jerry Nash, *who was on the proper side of the road,* * * *" We realize that this was held not to be error in the Zagata case, but the facts are not exactly the same. Although we here make no holding in respect to that statement, it might, if inserted in some later instruction in the same manner, be interpreted as susceptible of being understood as a comment or expression of opinion by the court. The defendants can avoid any possible question by rephrasing the statement.

The judgment is affirmed and the cause is remanded.

McDOWELL and STONE, JJ., concur.