Paul **WILLIAMS**, a Minor, By and Through LaDeen Williams, Mother and Next Friend, Plaintiff-Appellant,

v.

Faye E. **TUTTLE**, Defendant-Respondent.

No. 50982.

Supreme Court of Missouri,

En Banc.

Feb. 14, 1966.

Guilfoil, Caruthers, Symington, Montrey & Petzall, John P. Montrey, St. Louis, for appellant.

Francis X. Cleary, F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

WELBORN, Commissioner.

This is an action for damages for personal injuries by Paul Williams, a minor, through his mother as next friend, against Faye E. Tuttle. The claim arose out of injuries sustained by plaintiff when the "soap-box" cart which he was operating collided with an automobile driven by defendant on a St. Louis County street. The petition sought damages of $22,500. A jury returned a verdict for defendant. After his motion for new trial had been overruled, plaintiff appealed.

On this appeal, plaintiff urges error in an instruction at defendant's request by the trial court and in a ruling to an objection during the closing argument of defendant's counsel. Defendant contends that there was no error in either regard, but that in any event plaintiff failed to make a submissible case.

The accident in question occurred Sunday, September 17, 1961, at around 3:00 p. m. The weather was clear, the pavement dry. Plaintiff, who was then 14 years of age, and his younger brother, Patrick, had a "soap-box" cart, a 4-wheeled vehicle, some two to three feet in width and of unstated length. The cart had a single seat for a driver, who steered the vehicle by pushing his feet against a 2" x 4" to which the front axle was attached. The driver, seated on the seat, was near the ground and apparently no portion of the vehicle would have been above the head of the seated driver. The vehicle had no braking apparatus other than the dragging feet of its driver.

The Williamses lived in Hathaway Meadows subdivision at the intersection of Lanier Drive and Lovett Drive. Lanier was a north-south street and Lovett ran west from a 90° T-intersection with Lanier. Lovett was a concrete paved street, 23 to 24 feet in width. Lovett ran on a descending grade from Lanier. On the day in question, after making some repairs to the cart, plaintiff was coasting in it down Lovett Drive.

On the trip which produced the collision, plaintiff had started the cart from the driveway of the Williams residence on Lanier. His brother, Patrick, was riding a bicycle ahead of the cart, towing the cart by a 15-ft. rope attached to the bicycle seat at one end and held by plaintiff in the cart at the other. The two vehicles went down the driveway, turned right on Lanier and then turned to the right on Lovett.

All witnesses were somewhat vague on the distance involved, but according to plaintiff the collision with defendant's auto occurred about 200 feet down Lovett from Lanier. Plaintiff testified that about halfway to that point he gave a pull on the rope to gain speed and then turned loose of the rope. According to plaintiff, at that time the bicycle and cart were in the right-hand traffic lane of the street, some five or six feet from the right edge.

According to plaintiff's evidence, an automobile was parked at the right or north curb of Lovett in front of the Erick residence, the second house from the Williams residence at the intersection. The automobile was a Ford owned by the Ericks.

After coasting approximately one half of the distance between the point where he dropped the rope and the parked car, plaintiff started to "angle" the vehicle by steering it with his feet to the left of the parked car in order to pass the parked vehicle. At about the time the cart reached the center line of the pavement, the car of defendant, driven in the same direction that the cart was moving, appeared on plaintiff's left. The cart struck the automobile on the

right side between the rear door and rear wheel, throwing plaintiff from the cart and causing injuries not here in question.

Plaintiff was the sole eyewitness to the collision. His brother, who preceded him on the bicycle, had gone around the parked auto and did not look back before the collision occurred. Mrs. Velva Jean Harris, who lived on the south side of Lovett a short distance beyond the scene of the collision, testified that she saw, from her living room, the auto parked in front of the Erick residence; that she saw plaintiff and his brother on the cart and bicycle in the street; that defendant came west on Lovett, going very slowly, came up behind plaintiff on the cart, almost stopped, then pulled all the way to the left or south side of the street and started to pass the cart. As the auto overtook the cart, the witness's view of the cart was blocked and she did not see the actual collision. Mrs. Harris gave an affirmative answer to the question asked her on cross-examination as to whether or not there was "plenty of room between the two of them" at the time the cart passed from her view.

Plaintiff stated that he did not see defendant's auto until it appeared on his left an instant before the collision. He had not looked to the rear for traffic on Lovett. He heard no approaching auto and no horn was sounded by defendant to warn of her approach.

Plaintiff submitted his case on humanitarian negligence on the theory that plaintiff was in discoverable imminent peril when he began to turn the cart to the left and that defendant thereafter could have avoided the collision by stopping, slackening her speed or sounding her horn.

On this appeal, defendant contends that no submissible humanitarian case was made by plaintiff because the evidence, viewed most favorably to plaintiff, showed that when plaintiff started turning his cart toward the center of the street, defendant's auto was in a position where she could not then discover plaintiff's movement; that

plaintiff's imminent peril did not arise until he began to turn his cart to the left and therefore plaintiff failed to establish a position of discoverable imminent peril without resorting to surmise and speculation.

Plaintiff contends that his evidence, considered with the testimony of defendant favorable to plaintiff, warranted a finding by the jury that plaintiff was beginning to turn to the left by the time defendant entered Lovett Drive. We, therefore, look at defendant's testimony to see whether or not it is helpful to plaintiff in this regard.

According to defendant, she was driving a 1957 Ford two-door south on Lanier and made a right turn into Lovett. As she turned the corner she saw plaintiff and his brother in the cart and on the bicycle on the right-hand side of Lovett "very near the curb, maybe a couple feet." When she saw the boys, she slowed almost to a stop and then turned into the eastbound lane of Lovett, "all the way to the far side," driving from 10 to 15 miles per hour. She started to pass the cart, and, as she did so, the cart disappeared from her view on the right side of her auto. According to defendant, the cart was "at least six feet" from the right side of her auto when it disappeared from her view. The next thing she knew, she heard a "thump on the right rear wheel of (her) car * * * and as I looked around, I saw the boy, * * * being thrown into the street off of the cart." Defendant acknowledged that she did not sound her horn before starting to pass the cart.

Plaintiff argues that defendant's testimony regarding the location of the cart when she first saw it—two feet from the north curb—and when she passed it after going all the way to the south side of the street—at least six feet to her right as it disappeared from her view—shows that the cart must have moved at least ten feet to the left in the interval in question and therefore plaintiff must have been turning to the left, oblivious to peril, and moving

on a collision course, at the very moment defendant first turned into Lovett.

■ In this connection, we note that defendant testified that she watched the cart at all times after she turned into Lovett and that she did not see it move to the left at any time. Also defendant's testimony was that there was no automobile parked in front of the Erick residence. Of course, this testimony, unfavorable to plaintiff, is not binding upon plaintiff who may rely upon such portion of defendant's evidence as may favor his case insofar as it does not contradict plaintiff's testimony and is not inconsistent with plaintiff's fundamental theory. Ross v. St. Louis Public Service Company, Mo.Sup., 312 S.W.2d 849, 852(1), 65 A.L.R.2d 1324.

In our opinion, the jury could have found that, as defendant testified, she moved to the far left side of the pavement, preparatory to passing plaintiff on the cart and that, as she started to pass, she was "at least six feet" to the left of the cart. The jury could further find that the pavement was 23 to 24 feet wide and that defendant's automobile was approximately seven feet wide. Under defendant's testimony, the jury could thus have found that, at the time defendant started to pass the cart, it was from one to two feet to the right of the center line of the street. Since defendant's testimony placed the cart when she first saw it at two feet from the right curb of the street, the jury could have found that defendant was, or should have been, aware that the cart had moved from six to seven feet to the left while it was within the range of defendant's vision. Even taking plaintiff's testimony that he was five to six feet from the right-hand curb as he started to turn to the left, a movement to the left of four to five feet would have been required in order to have placed the cart where defendant testified that it was as she started to pass it. Furthermore, although defendant testified that she moved as close to the left-hand curb as possible in order to pass the cart, she did not testify that she remained at that position until the time of the collision. Plaintiff testified that the cart was approximately on the center line of the pavement at the time of the collision. Therefore, accepting defendant's testimony that she had moved to the left curb, the jury could also have found that, after defendant approached the left curb, she angled back to the right and toward the center of the pavement and toward the path of the cart which was angling to the left.

■ In these circumstances, the jury could have found that defendant knew, or should have known, that plaintiff's cart was approaching the path of defendant's vehicle as she started to pass the cart, that plaintiff was oblivious to the presence of defendant's auto, and, consequently, that at that time plaintiff was in a position of discoverable imminent peril.

We reject defendant's conclusion to the contrary, based upon speeds and distances, some of which are admittedly assumed because of the absence of direct evidence thereof. In any event, the computation, designed to show that plaintiff had not started to turn the cart to the left until it had passed from defendant's view to the right of her auto, is inconsistent with defendant's testimony which, as above set out, showed that the cart had moved to the left before she started to pass.

As previously stated, plaintiff submitted his case under the humanitarian doctrine. His verdict-directing instruction called for a favorable verdict if the jury found that, as defendant approached the point of the accident, plaintiff began turning his cart to the left and that plaintiff then became in a position of imminent peril of injury and that defendant knew or should have known thereof in time thereafter to have "avoided the collision * * * by stopping her automobile, or by slackening the speed thereof, or by sounding her horn, but that defendant failed to do so" and that her failure was negligence.

Instruction Number 4, given at the request of defendant, read as follows:

"The Court instructs you that if you believe and find from the evidence that the defendant, Faye Tuttle, drove her automobile westwardly on Lovett Drive and as she neared the vehicle in which plaintiff was riding she slowed her automobile and turned the same to her left into the eastbound lane of said drive, and if you further believe and find that Faye Tuttle started to pass the plaintiff's vehicle and as she did so there was a distance of approximately six feet between her automobile and the vehicle in which plaintiff was riding and that in so passing she was in the exercise of the highest degree of care, and if you believe and find that after the front end of the automobile passed the plaintiff's vehicle, and while the defendant's vehicle was still in the eastbound lane, the cart in which plaintiff was riding came into contact with the right rear wheel or right rear door of Mrs. Tuttle's automobile, then, and in such event, plaintiff is not entitled to recover and you will find your verdict in favor of defendant.

"And this is true whether there was or was not an automobile parked at the north curb west of the point of impact."

On this appeal, plaintiff contends that, while Instruction Number 4 purported to converse plaintiff's case, it failed to do so; it did not require findings on all charges of negligence submitted by plaintiff, and was not the converse of or inconsistent with plaintiff's humanitarian warning submission. Defendant replies that Instruction Number 4 properly submitted defendant's version of the accident and that the facts hypothesized clearly negated plaintiff's humanitarian submission. According to defendant, "the finding of a six foot separation (between the two vehicles) would necessarily negate imminent peril and plaintiff's humanitarian submission."

With such conclusion, we cannot agree. To have properly negated plaintiff's submission, the instruction should have further hypothesized facts relative to the direction of travel of the vehicles involved. A 6-ft. interval might well disprove imminent peril for vehicles traveling parallel or divergent courses. However, it would not necessarily do so if the courses were convergent, as plaintiff's submission hypothesized. The instruction ignored the essential basis of the negligence charged against defendant and was therefore prejudicially erroneous. Dell'Aria v. Bonfa, Mo. Sup., 307 S.W.2d 479, 481(3, 4); Cornelius v. Shields, Mo.Sup., 369 S.W.2d 209, 211 (1, 3); Scott v. Nash, Mo.App., 355 S.W.2d 626, 633(6-8).

The fact that the instruction required a further finding that defendant was in the exercise of the highest degree of care in passing the cart does not cure its defect. Such a "catch-all" phrase cannot be employed as a substitute for submission of an essential element of liability or non-liability. Cornelius v. Shields, supra; Scott v. Nash, supra.

In view of our conclusion regarding this assignment of error, we need not consider the assignment relating to the ruling on defendant's argument. The question presented likely will not recur on a retrial.

The judgment is reversed and the cause remanded for a new trial.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All concur except HENLEY, J., who dissents in separate dissenting opinion filed.

HENLEY, Judge (dissenting).

I respectfully dissent from the opinion of Judge Welborn. This for the sole reason that I do not consider that plaintiff made a submissible humanitarian case.